UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                              :
SHAVEZ JACKSON, individually and on behalf    :
of others similarly situated,                                 :
                                                              :
                            Plaintiffs,                       :
                                                              :    Case No. 13-cv-02001 (JPO)
              - v -                                           :
                                                              :
BLOOMBERG L.P.                                                :
                                                              :
                            Defendant.                        :
                                                              :
------------------------------------------------------------- x

### DECLARATION OF THOMAS H. GOLDEN IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

I, Thomas H. Golden, declare pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

1. I am a member of the bar of this Court and of Willkie Farr & Gallagher LLP, attorneys for Defendant Bloomberg L.P. ("Bloomberg" or the "Company"). I submit this declaration in opposition to Plaintiff's Motion to Certify a Class and Approve Class and Collective Action Notice (the "Motion").

2. In his declaration Mr. Getman states, with reference to a recently-concluded agreement between Bloomberg and the United States Department of Labor ("DOL"), that "[u]pon information and belief, Defendant did not disclose to the [DOL] that it was engaged in litigation of the very claims it was reaching a settlement on." (Declaration of Counsel in Support of Motion to Certify a Class And Collective Action and Issue Notice (Dkt. No. 18), June 18, 2013 ¶ 43.) In fact, as explained next, that assertion is entirely false.

3.   In 2011, Bloomberg and the DOL engaged in discussions about the possibility of Bloomberg's reclassifying certain positions from exempt to non-exempt under the federal Fair Labor Standards Act. No agreement was reached during that time.

4.   More than a year after Bloomberg's last communication with the DOL on that subject, on February 1, 2013, the DOL sent Bloomberg a "Summary of Unpaid Wages" (the "Original Summary"), which was a list it prepared of employees (both former and current) who held positions that, consistent with Bloomberg's prior discussions with DOL, would be reclassified as non-exempt. The Original Summary also included a dollar amount that the DOL proposed should be paid as backpay overtime to those employees for the time period of July 4, 2009 to July 2, 2011. The Original Summary included employees who had held a number of positions, including, but not limited to, GCUS Representatives ("GCUS Reps"), Contracts Representatives, and Service Desk Representatives. DOL asked Bloomberg to execute the Original Summary, indicating its agreement to pay the amounts shown on it.

5.   After receiving the Original Summary, I had a series of discussions with the DOL. In those discussions, among other things, I informed the DOL that two individuals recently had filed lawsuits against Bloomberg claiming federal and state wage and hour law violations: Siegel v. Bloomberg L.P., No. 13-CV-1351 (S.D.N.Y.), which was filed on February 28, 2013 on behalf of a purported class of Service Desk Representatives, and De Oca v. Bloomberg L.P., No. 13-CV-76 (S.D.N.Y.), which was filed on January 3, 2013 on behalf of a purported class of Contracts Representatives. Getman Sweeney, counsel to Ms. Jackson, represents the plaintiff in Siegel, but not the plaintiff in De Oca.

6.   The DOL concluded that, as a consequence of the pending litigations, the Original Summary should be revised. Consequently, on March 14, 2013, the DOL sent a revised

Summary of Unpaid Wages (the "Revised Summary") to Bloomberg, which excluded Service Desk Representatives and Contracts Representatives. It continued to include GCUS Reps (indeed, the instant lawsuit, in which Ms. Jackson sues on behalf of a purported class of GCUS Reps, had not yet been filed).

7. Upon receiving the Revised Summary, I had a number of further discussions with the DOL over the next two weeks. Eventually, Bloomberg and the DOL reached an agreement on the reclassification of certain positions, and the payment of backpay in accordance with the Revised Summary. Bloomberg signed the Revised Summary on March 26, 2013, indicating its agreement to pay the amounts shown on the Revised Summary to the individuals listed by May 1, 2013. Later in the day on March 26, 2013, after Bloomberg signed the Revised Summary but before I submitted it to the DOL, I learned through a docket alert that Ms. Jackson had commenced the instant lawsuit that same day. I immediately contacted the DOL to inform them of the filing. The DOL responded that, because the agreement to make the payments to GCUS Reps in accordance with the Revised Summary was finalized before Ms. Jackson's complaint was filed, its position was that Bloomberg should submit the signed Revised Summary and proceed with making the agreed-upon payments. I sent the executed Revised Summary to the DOL on March 26, 2013.

8. In accordance with the Revised Summary, Bloomberg proceeded with tendering the required payments to GCUS Reps (among others) around April 25, 2013. In mailing the checks to the GCUS Reps, Bloomberg expressly advised them (i) that cashing the check would constitute a waiver of certain rights, (ii) of the pending litigation brought by Ms. Jackson, and (iii) to contact Getman Sweeney, Ms. Jackson's attorneys, with any questions or concerns. The letter that Bloomberg sent to GCUS Reps is attached as **Exhibit A**.

9. On April 26, 2013, I informed Getman Sweeney of the reclassification and backpay awards. That same day, Getman Sweeney posted a notice on its website purporting to warn current and former GCUS Reps that "Bloomberg was secretly negotiating a deal" with the DOL and it "considers the settlement to be a tempting but dangerous trap for unwary GCUS Representatives." The notice also incorrectly stated that the fluctuating work week calculation, which the DOL used to determine the amounts that Bloomberg should pay to each GCUS Rep, "has been specifically disallowed by the US District Court for the Southern District of NY." A true and correct copy of the page of Getman Sweeney's website with the notice is attached as **Exhibit B**.

10. As of July 11, 2013, 67 of the 95 current and former GCUS Reps who received checks in accordance with the Revised Summary had cashed them.

11. Attached as **Exhibit C** is a chart listing the hours that Shavez Jackson spent in any Bloomberg office for the entire period that she held the position of GCUS Representative, broken down on a daily and weekly basis. This chart was prepared at my direction by consultants with whom my firm is working on this matter using Bloomberg's records of when and where employees enter and exit a Bloomberg office, known as "Badge Data." Bloomberg captures Badge Data when employees place their Bloomberg ID card against an electronic reader when they enter and exit a Bloomberg office building. The following are descriptions of the information reflected in each column in the chart:

    a. EMPLID: The employee's identification number. This information comes directly from the Badge Data.

    b. Name: The employee's name. This information comes directly from the Badge Data.

c. Wk Start: The date at the beginning of each particular week. This information is based on the dates in the Badge Data.

d. Wk End: The date at the end of each particular week. This information is based on the dates in the Badge Data.

e. Sun, Mon, Tues, Wed, Thur, Fri, Sat: The total hours that Ms. Jackson spent in a Bloomberg office on each day of each particular week. No deductions were made for non-compensable time, such as lunch breaks or time elapsed between arriving to an office and beginning work. This information is based on the times in the Badge Data.

f. Total: The sum of the hours that Ms. Jackson spent in a Bloomberg office for each particular week.

Dated: July 11, 2013
New York, New York

_____
Thomas H. Golden