UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
SHAVEZ JACKSON,                                       :
on behalf of herself, FLSA Collective Plaintiffs,
and the Class,                                        :
                                                      :
                        Plaintiff,                    :    MEMORANDUM ORDER
                                                      :
         -v.-                                         :    13 Civ. 2001 (JPO) (GWG)
                                                      :
 BLOOMBERG L.P.                                       :
                                                      :
                        Defendant.                    :
-------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      This lawsuit under the Fair Labor Standards Act ("FLSA") and the New York Labor Law has been certified as a class action with respect to the New York claims and has been approved as a collective action under the FLSA. See Order, dated Mar. 19, 2014 (Docket # 31), at 1. The Rule 23 class was defined as: "Global Customer Support (GCUS) Representatives working in New York who worked more than 40 hours in a pay week without payment of overtime at the rate of time and one-half at any time within the six years preceding March 26, 2013." Id. at 13.

      Bloomberg now seeks an order permitting it to contact 10 out of approximately 482 class members in this case, notwithstanding the existence of New York's ethical rule barring contact with represented parties, N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0 ("Rule 4.2(a)").[1] Bloomberg makes this application because these 10 individuals, who were direct supervisors of GCUS representatives during the class period in a job title called "team leader," are also class members themselves based on their earlier jobs as GCUS representatives. See Def. Second Ltr. at 1; Ex. A to Def. Fourth Ltr. In addition, since they left their jobs as GCUS representatives, some of these individuals have held the title of "project manager," "regional manager," or "trainer" — positions that involved either indirect management or other interaction with GCUS representatives. See Def. Second Ltr. at 4-5; Ex. A to Def. Second Ltr.; Ex. A to Def. Fourth

---

[1] See Letter from Deirdre N. Hykal, dated Jan. 20, 2015 (not docketed) ("Def. First Ltr."); Letter from Deirdre N. Hykal, filed Feb. 3, 2015 (Docket # 76) ("Def. Second Ltr."); Letter from Deirdre N. Hykal, filed Feb. 13, 2015 (Docket # 83) ("Def. Third Ltr."); Letter from Deirdre N. Hykal, filed Feb. 18, 2015 (Docket # 85) ("Def. Fourth Ltr."). Plaintiffs have opposed the request. See Letter from Dan Getman, filed Jan. 23, 2015 (Docket # 69) ("Pl. First Ltr."); Letter from Dan Getman, filed Feb. 6, 2015 (Docket # 80) ("Pl. Second Ltr."); Letter from Dan Getman, filed Feb. 18, 2015 (Docket # 86) ("Pl. Third Ltr.").

Ltr. Bloomberg contends that it needs to speak to these direct supervisors about their time as supervisors because they were responsible for the day-to-day management of class members — including scheduling, evaluations, and termination — and were involved with hiring, interviewing, and communicating job responsibilities. See Def. Second Ltr. at 2-3. According to Bloomberg, other individuals, such as Human Resources personnel, cannot provide this information. See id. at 5.

Bloomberg states that it only wishes to discuss with these individuals their roles as managers and supervisors and that it will not talk to them about anything that occurred while they were GCUS representatives. See id. at 7, 9; Def. First Ltr. at 3-4.

Plaintiffs oppose Bloomberg's request on the ground that it may obtain the information it seeks from other individuals who are not class members, such as Human Resources personnel, recruiters, opt-outs, and non-employees. See Pl. Second Ltr. at 1, 4. They also note that Bloomberg had the opportunity to speak with many of the individuals it now wishes to contact before the litigation commenced or before the class was certified, but failed to do so, see id. at 4-5, and argue that Bloomberg should be satisfied with noticing the depositions of these individuals, see id. at 9. Plaintiffs assert that they will be harmed if Bloomberg's request is granted, because Bloomberg's speaking with current employees who are class members will be "coercive" and will "chill" those individuals' participation in the case as class members. Id. at 5-6. The Court notes that none of the 10 individuals has filed a document indicating that he or she has opted in as an FLSA plaintiff.

The question of contact with represented parties in class action cases has typically arisen in the context of putative class members. We thus rely for our authority to act in this matter on the fact that a district court has "general supervisory authority over members of the bar" and an obligation to "enforce professional responsibility standards." United States v. Hammad, 858 F.2d 834, 837 (2d Cir. 1988) (citing In Re Snyder, 472 U.S. 634, 645 n.6 (1985)). This power has been recognized to have special force in the context of contact with putative class members in class actions., see, e.g., Urtubia v. B.A. Victory Corp., 857 F. Supp. 2d 476, 484-85 (S.D.N.Y. 2012); accord Scott v. Chipotle Mexican Grill, Inc., 2014 WL 4852063, at *2 (S.D.N.Y. Sept. 29, 2014) ("A district court's authority to control lawyers' conduct is particularly broad in the context of class actions and FLSA collective actions.") (citations omitted), and it should have no less force here. A court's authority to regulate communications in class actions "extends to communications that interfere with the proper administration of a class action," "those that abuse the rights of members of the class," and situations in which "there is a relationship that is inherently coercive." Sorrentino v. ASN Roosevelt Ctr. LLC, 584 F. Supp. 2d 529, 532-33 (E.D.N.Y. 2008) (quotation marks and citation omitted); accord Dodona I, LLC v. Goldman, Sachs & Co., 300 F.R.D. 182, 184-85 (S.D.N.Y. 2014).

Rule 4.2(a) provides that "[i]n representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter . . . ." The issue presented by Bloomberg's application might be characterized as involving the question of what constitutes the "subject of the representation." From one perspective, Rule 4.2(a) is not actually implicated by

2

Bloomberg's application because Bloomberg does not intend to communicate with any class members on the "subject of [their] representation" at all. Rather, it will be asking the class members only about their experience as managers or supervisors during time periods when the employee is not entitled to compensation as a GCUS representative and thus is not represented by class counsel. Bloomberg recognizes that it cannot speak to these individuals about their experiences as GCUS representatives, which is the only employment status for which class counsel represents them.

While there is some value to examining Bloomberg's application from this perspective, we do not rely on it entirely because of the difficulties that might arise if the concept of the "subject of the representation" was split too finely. We recognize that, as a prophylactic matter, it would be better not to place employers and employees in the position of having to distinguish between time periods when the person was a class member and the person was a non-class member. On the other hand, we do not view the task as particularly difficult in this case given that there is a demarcation in job responsibilities between GCUS representatives and team leaders. Nonetheless, if Bloomberg had a host of non-class-member team leaders from whom to obtain information, we would be inclined to require Bloomberg to obtain the information from non-class-member team leaders and thereby avoid even a potential for the problems that might arise from trying to limit conversation topics along the lines Bloomberg proposes. Thus, we agree with the court in E.E.O.C. v. Morgan Stanley & Co., Inc., 206 F. Supp. 2d 559 (S.D.N.Y. 2002), aff'd, 2002 WL 1431685 (S.D.N.Y. July 1, 2002), which held, in a somewhat analogous situation, that a court must "balance the interest of the parties in presenting their respective positions and the interest of class members in being free from inappropriate influences." Id. at 562.

We begin by addressing several issues raised by plaintiffs. First, plaintiffs assert that there is a "harm in allowing employers to speak with employees engaged in suing it, particularly when, as here, those employees are still employed by the employer." Pl. Second Ltr. at 2. Certainly, the potential for harm exists, but there are many situations in which employers regularly "speak with" employees engaged in suing it on topics other than the representation. Rule 4.2(a) does not bar all contact with a represented party but only contact on the subject of the representation.

Second, the main "harm" plaintiffs discuss is the possibility that a class member who has conctact with Bloomberg about his or her activities as a GCUS representative will be coerced into opting out as a class plaintiff. See Pl. Second Ltr. at 2, 5-6. We believe this potential harm is minimal in this case, however. There are only a small number of class members sought to be contacted by Bloomberg. Plaintiffs' attorney will have every opportunity to counsel these individuals in full prior to the contact. Indeed, he will be given the names of the individuals to be contacted to allow for specific conversations with them about counsel's role in the litigation and the fact that they have every right to not opt out as plaintiffs. Plaintiffs point to no pattern or even incidents of misconduct in contacts or conduct by Bloomberg. Accordingly, the Court views the potential for coercion as minimal. Plaintiffs cite case law in which courts have expressed concerns about how low-level employees may react to communications from employers. See Pl. Second Ltr. at 6 (citing Scott, 2014 WL 4852063, at *4). But, importantly,

the individuals at issue here are all in supervisory or management positions, have all been promoted by Bloomberg, and thus stand on far different footing than low-level employees in terms of the likelihood that they will perceive interviews by Bloomberg personnel or attorneys as suggesting that they should opt out of the class. They will be further supported by the fact that plaintiffs' counsel will presumably advise them on this point before any interviews take place.[2]

Third, while plaintiffs characterize the knowledge of these individuals as being of minimal relevance, see Pl. Second Ltr. at 2, the Court accepts Bloomberg's contention that it needs to speak with these individuals to determine the information they have about the individuals they managed and supervised, to investigate "specific allegations about certain Team Leaders and managers" made by plaintiffs, and to "satisfy its discovery obligations" to produce responsive documents and to prepare a Rule 30(b)(6) witness for deposition. Def. Second Ltr. at 5-6.

Fourth, the Court rejects plaintiffs' suggestion that Bloomberg's application should be denied because it failed to reveal what information it had already obtained from class members before the class was certified and the ban under Rule 4.2(a) went into effect. See Pl. Second Ltr. at 3-5. In the context of a litigation, such material is plainly work product, whether obtained by Bloomberg personnel or by Bloomberg's attorneys. See, e.g., Szulik v. State St. Bank & Trust Co., 2014 WL 3942934, at *3 (D. Mass. Aug. 11, 2014) (work product doctrine "protects writings made by a party, even without any involvement by counsel") (citations omitted). Nor would the absence of such discussions be meaningful inasmuch as a party may reasonably choose not to approach witnesses right off the bat, and instead wait until a later stage of the case.

Fifth, the Court rejects plaintiffs' contention that Bloomberg should be satisfied to rely on information from former employees rather than information from current employees. See Pl. Second Ltr. at 4. Former employees inevitably have powerful reasons not to cooperate or be forthcoming with their former employer. An employee-witness is far superior in terms of the employer's ability to contact that witness and obtain information necessary to the lawsuit. Sometimes an attorney needs an employee-witness at a moment's notice to answer questions or to assist in the search for documents. Former employees are not sufficient for this purpose.

Sixth, we do not accept plaintiffs' argument that Bloomberg's interests can be satisfied by gathering all the information it needs from an employee-class member in a deposition with plaintiffs' counsel present. See id. at 9. The work product doctrine itself reflects that litigants are entitled to a zone of privacy when conducting an investigation to prepare for litigation. As the Supreme Court has stated, "it is essential that a lawyer work with a certain degree of privacy,

---

[2] Plaintiffs also suggest that the class may be harmed by the actual statements the employee-class members make to Bloomberg. See Pl. First Ltr. at 4. The gist of this argument seems to be that Bloomberg could use any information it receives to defend the case. The harm that arises from Bloomberg acquiring such information, however, is no different from the harm that would result if these individuals gave testimony favorable to Bloomberg in a deposition. We thus do not believe that this interest weighs significantly in the balance.

4

free from unnecessary intrusion by opposing parties and their counsel.  Proper preparation of a client's case demands that he assemble information . . . without undue and needless interference."  Hickman v. Taylor, 329 U.S. 495, 510-11 (1947).

   Finally, plaintiffs assert that approval of Bloomberg's proposed contact is "unprecedented," Pl. Third Ltr., a contention that would appear to be true inasmuch as neither the Court nor counsel have found case law addressing a request similar to Bloomberg's.  But denial of the relief requested by Bloomberg would be equally "unprecedented."  The lack of applicable precedent is understandable given the unusual situation in this case, where the defendant-employer may freely speak to only two of 12 current employees who directly supervised the class members during the class period.  In the case most heavily relied on by plaintiffs, Campbell v. PricewaterhouseCoopers, LLP, 2012 WL 1355742 (E.D. Cal. Apr. 18, 2012), the employer-defendant asserted that it should be permitted to interview employee-class members in a particular job title about their work in reviewing and supervising the work of other class members during the same time period even if the employer could not interview the employee about his or her own work.  See id. at *2.  The court found that any such conversation would necessarily include a discussion of the class member's own work.  Id.  Here, by contrast, the employee-class members sought to be interviewed stopped being GCUS representatives and became team leaders on specific dates, at which moment they took on a separate, supervisory function.  It should not be difficult for these individuals to confine their discussions to their non-GCUS-representative job responsibilities and to not discuss their time as GCUS representatives.  This is particularly so in this case where the factual disputes are confined to the issues of how many hours the GCUS representatives worked and what understanding they had, if any, of what hours were covered by their salary.

   As already noted, the Court is persuaded that Bloomberg has good reason to wish to consult with current employees about their experience as managers and supervisors during the class period in order to prepare for this lawsuit.  With this assumption governing, the Court views the critical issue in this case as evaluating the weight of this interest.  Of great importance to the Court's evaluation is our view that Bloomberg has a genuine need to contact class members.  In many class action situations, there will be ample current management and supervisory staff who are not class members, and thus contact with class members will be unnecessary and unwarranted.  That is not the case here, however. There are only 12 current employees who served as team leaders during the class period, and 10 of those are class members.  See Ex. A to Def. Second Ltr.  One of these 10 also served as a GCUS regional manager during the class period, and another also served as a trainer.  See id.

   The Court has weighed the importance to Bloomberg of contacting these individuals to prepare its case against the possibility that discussions with these individuals may cause them to opt out of any class action.  We find that this balance favors Bloomberg with respect to seven out of the ten employees: Jennifer Behm, Allison Dorman, David Elmy, Monet Kim, Katherine Koelle, Martin Thomas, and Jaime Winters.  Each of these employees spent longer than a year as team leader (or in that role in addition to their time spent as a trainer).  See Ex. A to Def. Fourth Ltr.  With respect to the remaining three employees, their time as team leader was shorter than a year and, indeed, shorter than the time they spent as a GCUS representative.  See id.  Thus, the

balance is not nearly as compelling.  Accordingly, Bloomberg may contact the seven above-named individuals.  The Court notes that this number represents seven out of a total class of approximately 482.

However, the Court will place restrictions on this contact, as the court did in E.E.O.C. v. Morgan Stanley & Co., Inc., 206 F. Supp. 2d at 563, to minimize the potential that the contacts could be perceived as coercive to the individual or harmful to the class as a whole.  First, any contact must not take place until eight days after the date of this order so that plaintiffs' counsel has an opportunity to contact the seven employee-class members prior to any contact by Bloomberg.  As for Bloomberg's own contact, Bloomberg must make clear to each employee-class member, in writing, at least three business days in advance of the first contact, that Bloomberg wishes to speak to the employee only in his or her role as a team leader, trainer, supervisor and/or manager in the GCUS department; that this conversation and any similar future conversations are voluntary; that there is a class action pending in federal court about wages the employee may be due as a GCUS representative; that the employee is represented by counsel with respect to his or her employment as a GCUS representative; and that Bloomberg is not seeking to have the employee opt out of the class.  Bloomberg must also affirmatively emphasize that the employee should not discuss his or her experience as a GCUS representative, that the employee should not discuss the lawsuit, and that the employee should not reveal any discussions he or she may have had with class counsel.

SO ORDERED.

Dated: February 25, 2015
      New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge