UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                   :

SHAVEZ JACKSON, individually and on behalf  :
of others similarly situated,                         :

                              Plaintiffs,  :               13-CV-2001 (JPO)
                                     :

                       -v-                  :             OPINION AND ORDER
                                     :

BLOOMBERG, L.P.,                          :
                          Defendant.  :
                                     :
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

        Plaintiff Shavez Jackson, individually and on behalf of all others similarly situated,

brings this action against Bloomberg L.P. ("Bloomberg") for allegedly failing to compensate

Global Customer Support ("GCUS") representatives for overtime work, in violation of the Fair

Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  A collective action

under the FLSA and a class action with respect to the NYLL claims have been certified.  Now

before the Court are Plaintiffs' objections to an order of the Honorable Gabriel W. Gorenstein,

U.S. Magistrate Judge, concerning Bloomberg's request to contact certain members of the class.

For the reasons that follow, Plaintiffs' objections are sustained.

I.       **Background**[1]

        On March 19, 2014, the Court certified an FLSA collective action and an NYLL class

action in this matter.  (Dkt. No. 31.)  In early 2015, Bloomberg sought an order from Judge

Gorenstein—to whom this case had been referred for general pretrial supervision—that would

permit Bloomberg to contact 10 members of the certified class outside the presence of Plaintiffs'

---

[1] Only the background relevant to Judge Gorenstein's order dated February 25, 2015, is set out
here.  Familiarity with the factual and procedural history of this case is presumed.  *See Jackson v.
Bloomberg, L.P.*, 298 F.R.D. 152 (S.D.N.Y. 2014).

counsel.  (*See* Dkt. No. 88 ("Contact Order") at 1 & n.1.)  After the parties filed letters

concerning Bloomberg's contact request (*see* Dkt. Nos. 69, 76, 80, 83, 85, 86), Judge Gorenstein

issued an order on February 25, 2015, permitting contact under certain conditions with seven of

the class member employees with whom Bloomberg sought to communicate (Contact Order).

Judge Gorenstein stayed the effective date of the order to permit Plaintiffs to object.  (Dkt. No.

89.)  Plaintiffs objected to the Contact Order on March 5, 2015.  (Dkt. No. 91.)  Bloomberg

responded on March 12 (Dkt. No. 93), and Plaintiffs have replied (Dkt. Nos. 97-98).  Discovery

deadlines in the case have been extended until 45 days after this Court's ruling on the objections

to the Contact Order.  (Dkt. No. 92.)

## II.      Standard of Review

A district court will not set aside a magistrate judge's decision on a nondispositive matter

unless it "is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); *see Passlogix, Inc. v.*

*2FA Tech., LLC*, No. 08 Civ. 10986 (PKL), 2010 WL 1789929, at *4 (S.D.N.Y. May 4, 2010).

"A magistrate judge's decision is 'clearly erroneous' only if the district court is 'left with the

definite and firm conviction that a mistake has been committed.'"  *Galland v. Johnston*, No. 14

Civ. 4411 (RJS), 2015 WL 1290775, at *4 (S.D.N.Y. Mar. 19, 2015) (quoting *Easley v.*

*Cromartie*, 532 U.S. 234, 242 (2001)).  A decision is "'contrary to law' if it 'fails to apply . . . or

misapplies relevant statutes, case law, or rules of procedure.'"  *Dilworth v. Goldberg*, No. 10

Civ. 2224 (JMF), 2014 WL 3798631, at *13 (S.D.N.Y. Aug. 1, 2014) (quoting *MASTR*

*Adjustable Rate Mortgs. Trust v. UBS Real Estate Sec. Inc.*, No. 12 Civ. 7322 (HB), 2013 WL

6840282, at *1 (S.D.N.Y. Dec. 27, 2013)).

III.    **Discussion**

A.    **Rule 4.2**

"Although disciplinary rules and rules of professional responsibility are not statutorily mandated, federal courts enforce professional responsibility standards pursuant to their general supervisory authority over members of the bar." *SEC v. Lines*, 669 F. Supp. 2d 460, 463 (S.D.N.Y. 2009) (quoting *United States v. Hammad*, 858 F.2d 834, 837 (2d Cir. 1988)) (internal quotation marks omitted).  Generally, "[t]he New York Rules of Professional Conduct provide that a lawyer representing a client may not have *ex parte* communications with an opposing party who the lawyer knows is represented by counsel, unless the lawyer has the consent of that party's counsel." *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 415 (S.D.N.Y. 2011) (citing N.Y. Rules Prof'l Conduct 4.2).  As relevant here, Rule 4.2 of the New York Rules of Professional Conduct (sometimes called the "no-contact rule") provides:

> In representing a client, a lawyer shall not communicate or cause
> another to communicate about the subject of the representation
> with a party the lawyer knows to be represented by another lawyer
> in the matter, unless the lawyer has the prior consent of the other
> lawyer or is authorized to do so by law.

N.Y. Rules Prof'l Conduct 4.2(a), codified at N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0 (2015).  "Barring lawyers from communicating directly with an opposing party represented by counsel preserves the integrity of the attorney-client relationship, including by preventing counsel from driving a wedge between the opposing attorney and that attorney's client." *Scott v. Chipotle Mexican Grill, Inc.*, No. 12 Civ. 8333 (ALC) (SN), 2014 WL 4852063, at *2 (S.D.N.Y. Sept. 29, 2014) (internal quotation marks omitted).  The Rule "does not prohibit communication with a represented party . . . concerning matters outside the representation."  N.Y. Rules Prof'l Conduct 4.2 cmt. 4.  The question whether conduct implicating Rule 4.2 is permissible

"require[s] a case-by-case determination." *Grievance Comm. v. Simels*, 48 F.3d 640, 649 (2d Cir. 1995).

Rule 4.2 applies to members of a class after class certification. *See Gortat v. Capala Bros.*, No. 07 Civ. 3629 (ILG) (SMG), 2010 WL 1879922, at *2 (E.D.N.Y. May 10, 2010) ("Upon class certification, the rules governing communications with class members are heightened because they 'apply as though each class member is a client of the class counsel.'" (quoting Manual for Complex Litigation § 21.33 (4th ed. 2004)), *objections overruled*, 2010 WL 3417847 (E.D.N.Y. Aug. 27, 2010)); *see also Van Gemert v. Boeing Co.*, 590 F.2d 433, 440 n.15 (2d Cir. 1978) (en banc) ("A certification under Rule 23(c) makes the Class the attorney's client for all practical purposes."), *aff'd*, 444 U.S. 472 (1980).[2]  Putative class members—because they are not considered clients of class counsel—do not enjoy the same degree of protection, so decisions concerning precertification contact are of limited value in this context. *See Garrett v. Metro. Life Ins. Co.*, No. 95 Civ. 2406 (PKL), 1996 WL 325725, at *6 (S.D.N.Y. June 12, 1996) (stating that "before class certification, the putative class members are not 'represented' by the class counsel for purposes" of the predecessor to Rule 4.2), *report & rec. adopted*, 1996 WL 563342 (S.D.N.Y. Oct. 3, 1996); *see also, e.g.*, *Bobryk v. Durand Glass Mfg. Co.*, No. 12 Civ.

---

[2] There is some debate about when a full attorney-client relationship begins in a class action. Many courts have held that such a relationship begins upon class certification. *See Dodona I, LLC v. Goldman, Sachs & Co.*, 300 F.R.D. 182, 187 (S.D.N.Y. 2014) (citing cases).  An ethics opinion from the New York City Bar Association has reached the same conclusion. *See* N.Y.C. Bar Ass'n Formal Op. 2004-01, *available at* http://www.nycbar.org/ethics/ethics-opinions-local/2004-opinions/814-lawyers-in-class-actions ("When the lawyer proposing to communicate represents a party opposing a class, the prohibition applies when the class has been certified."). An ABA ethics opinion interpreting Model Rule 4.2, on the other hand, maintains that "[a] client-lawyer relationship with a potential member of the class does not begin until the class has been certified and the time for opting out by a potential member of the class has expired." ABA Formal Op. 07-445 (2007).  In any event, immediately following class certification, at least "a limited attorney-client relationship exist[s] between plaintiffs' attorney and the absent class members," to allow class counsel to "aid[] prospective class members in deciding whether or not to join in the class action." *Tedesco v. Mishkin*, 629 F. Supp. 1474, 1483 (S.D.N.Y. 1986) (internal quotation marks omitted).

5360 (NLH/JS), 2013 WL 5574504, at *9 (D.N.J. Oct. 9, 2013) (holding that "until a Rule 23 class is certified and the opt-out period expires, defense counsel is not completely barred from communicating with putative class members" under New Jersey's version of Rule 4.2).

### B.     Application

Bloomberg seeks to speak with 10 individuals "who were direct supervisors of GCUS representatives during the class period in a job title called 'team leader,'" who "are also class members themselves based on their earlier jobs as GCUS representatives." (Contact Order at 1.) Some of these individuals also held other positions that "involved either indirect management or other interaction with GCUS representatives." (*Id.*)

At the outset, the Court concludes that the contact sought by Bloomberg will concern the "subject of the representation." The only reason that Bloomberg wishes to speak with the class member employees at issue here is that they possess information germane to this lawsuit. Bloomberg apparently plans to elicit that information by asking these class members about their experience of supervising GCUS representatives. This line of questioning (as restricted by the Contact Order) might not directly require the employees to talk about their *own* experiences during the time period for which they are class members.[3] (*See* Contact Order at 2-3.) However, these questions would nonetheless concern the subject of the employees' representation because the central issues in this suit focus on the employment and supervision of GCUS representatives. *See Campbell v. PricewaterhouseCoopers, LLP*, No. CIV. S-06-2376 (LKK/GGH), 2012 WL 1355742, at *2 (E.D. Cal. Apr. 18, 2012) (rejecting a similar argument). That Bloomberg's proposed questioning of these class members would be focused on their experience as

---

[3] Plaintiffs assert that some overlap is inevitable (*see* (Dkt. No. 91 ("Pl. Obj.") at 11-12), and at least one court has made a finding of overlap in a comparable situation, *see Campbell v. PricewaterhouseCoopers, LLP*, No. CIV. S-06-2376 (LKK/GGH), 2012 WL 1355742, at *2-3 (E.D. Cal. Apr. 18, 2012). The Court does not need to reach the question here, because Rule 4.2 is implicated in any event.

*supervisors* of GCUS representatives does not make that questioning any less about the "subject

of the representation"; Bloomberg's contrary reading is too narrow to be a fair reading of the

phrase.  Accordingly, Rule 4.2 applies here.

It is undisputed that Bloomberg does not have the "prior consent" of Plaintiffs' counsel to

contact class members in this case.  (Dkt. No. 91 ("Pl. Obj.") at 7 n.4.)  Accordingly, the only

remaining question is whether the contact is "authorized by law."  *See* ROY D. SIMON, SIMON'S

NEW YORK RULES OF PROFESSIONAL CONDUCT ANNOTATED 1206 (2015 ed.) (stating that the

"two express exceptions to the no-contact rule" are "the only two exceptions").

Some uncertainty surrounds the issue of what kinds of contacts are "authorized by law."

A 1995 ABA ethics opinion interpreting Model Rule 4.2—to which the Court looks for guidance

in interpreting the New York rule—explored this question and stated that the condition could be

> satisfied by a constitutional provision, statute or court rule, having
> the force and effect of law, that expressly allows a particular
> communication to occur in the absence of counsel—such as court
> rules providing for service of process on a party, or a statute
> authorizing a government agency to inspect certain regulated
> premises.  Further, in appropriate circumstances, a court order
> could provide the necessary authorization.

ABA Formal Op. 95-396 (1995) (footnotes omitted).  A commentator on New York Rule 4.2

similarly enumerates the types of communications considered to be authorized by law:

> (a) undercover investigations conducted or sponsored by
> prosecutors (within constitutional limits); (b) service of a summons
> and complaint, subpoena, or other paper that by law must be
> served on a party personally; (c) depositions and examinations
> before trial . . . in civil cases; (d) conferences with a judge or other
> third party neutral where all parties and lawyers are present; and
> (e) communications that a court has authorized by court order
> (written or oral).

SIMON, *supra*, at 1207.  The same commentator goes on to state that, as a general matter, "[o]nly at a deposition, where counsel for a represented deponent is invariably present, is a lawyer in civil litigation authorized by law to speak directly to a represented party."  *Id.*

The only potentially applicable exception to Rule 4.2 here is authorization by court order.  The rule, however, provides little guidance as to when courts *should* permit contact.  Some analysis of the history of Rule 4.2 is helpful in this regard.  New York adopted a modified version of the ABA Model Rules of Professional Conduct in 2009.  *See* SIMON, *supra*, at 3.  The version of ABA Model Rule 4.2 effective at the time of New York's adoption (which remains in effect today) contains similar, but not identical, language:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law *or a court order*.

ABA Model Rule Prof'l Conduct 4.2 (2011) (emphasis added); *see also Montejo v. Louisiana*, 556 U.S. 778, 790 (2009) (quoting 2008 version of Model Rule 4.2).  The ABA rule also includes an associated comment:

> A lawyer who is uncertain whether a communication with a represented person is permissible may seek a court order.  A lawyer may also seek a court order in exceptional circumstances to authorize a communication that would otherwise be prohibited by this Rule, for example, where communication with a person represented by counsel is necessary to avoid reasonably certain injury.

ABA Model Rule Prof'l Conduct 4.2 cmt. 6.

The New York rule did not adopt the phrase "or a court order," nor did it include the related comment.  One might conclude that the omission of this phrase reflects the intent of New York rulemakers to preclude contact even pursuant to court orders that would otherwise violate Rule 4.2.  On this reading, Bloomberg's request would necessarily be foreclosed, since it asks

the Court to authorize contact that would otherwise violate the rule and for which there is no

other legal authorization.  But without more, the Court does not consider the omission of the "or

a court order" language, and the corresponding comment, to be dispositive.  It may indicate only

that New York authorities considered the category of communications "authorized by law" to

tacitly permit parties to obtain court-ordered exceptions from Rule 4.2 in appropriate

circumstances.[4]

Also of note is the backdrop to the addition of the "court order" language to the ABA

model rule.  When the ABA adopted an amendment adding this language, the committee reporter

explained the change as follows:

> Although a communication with a represented person pursuant to a
> court order will ordinarily fall within the "authorized by law"
> exception, the specific reference to a court order is intended to alert
> lawyers to the availability of judicial relief in the rare situations in
> which it is needed.

AMERICAN BAR ASSOCIATION, A LEGISLATIVE HISTORY: THE DEVELOPMENT OF THE ABA

MODEL RULES OF PROFESSIONAL CONDUCT, 1982-2005, at 540-41 (2006).  Moreover, a proposal

to amend the rule to read "authorized . . . by a court order *obtained on prior notice*" was defeated

because the ABA Ethics Commission believed "there often would not be time in the exceptional

circumstances in which its . . . language regarding court orders is intended to apply to give

proper notice."  *Id.* at 543; *see also* Geoffrey C. Hazard, Jr., & Dana Remus Irwin, *Toward a

Revised 4.2 No-Contact Rule*, 60 HASTINGS L.J. 797, 829 (2009) (remarking that a comment to

Rule 4.2 "states that an emergency may justify a court order authorizing communication").

---

[4] *Cf.* Carl A. Pierce, *Variations on a Basic Theme: Revisiting the ABA's Revision of Model Rule
4.2 (Part III)*, 70 TENN. L. REV. 643, 668 (2003) (observing that the ABA commission "did not
regard [the addition of this language to be] a substantive change because a communication
authorized by a court order was thought to be a communication authorized by law").

Furthermore, another member of the Commission objected to the addition of the "court order" language on the ground that "there are no meaningful standards that would inform the courts when it is appropriate for them to intervene."  Carl A. Pierce, *Variations on a Basic Theme: Revisiting the ABA's Revision of Model Rule 4.2 (Part I)*, 70 TENN. L. REV. 121, 137 n.37 (2002).  The Court agrees that the rule's purposes could be defeated if courts permit contact with represented parties too broadly—a worrisome possibility given the absence of clear limitations on the scope of permissible court-ordered contact.

In light of the foregoing, the Court concludes that permitting Bloomberg to contact class members would be contrary to law.  Judge Gorenstein's thoughtful order balanced the need asserted by Bloomberg against the possible harm outlined by Plaintiffs, and ultimately authorized Bloomberg to contact seven members of a 482-member class under restrictions designed to limit the potential for such harm.  However, the Court is persuaded that the ethical rules do not permit the type of contact at issue here.  Bloomberg's assertion of a "genuine need" to speak with class members to prepare its defense is simply inadequate to permit a court-ordered exception from Rule 4.2.

It is only in "exceptional circumstances" that court orders may permit parties to engage in contact with represented persons that would otherwise violate Rule 4.2.  The commentary to the ABA rule suggests that such authorization is usually appropriate only in an exigent situation—circumstances too pressing to permit notice to opposing parties, and which present a risk of "reasonably certain injury."  The situation here presents no such danger.  More importantly, the situation in this case—where a party seeks to speak with class members to aid in the preparation of its defense—does not constitute "exceptional circumstances."  Bloomberg evidently would prefer to speak with the class members in question outside of the presence of Plaintiffs' counsel.  However, the Court concludes that Rule 4.2 does not permit a court order authorizing such

contact for the sake of Bloomberg's desire for convenience and confidentiality in the preparation

of its defense in this action—interests that are common, if not universal.

In addition, the requested contact here raises the specter of a different risk: that contact

with class members who are currently employed by Bloomberg could be coercive.  *See Scott*,

2014 WL 4852063, at *4 ("In cases like this one where the defendant is also the employer of

members of the [class], the workplace relationship . . . put[s] the defendant in a position to

exercise strong coercion." (internal brackets and quotation marks omitted)); *Ralph Oldsmobile,*

*Inc. v. Gen. Motors Corp.*, No. 99 Civ. 4567 (AGS), 2001 WL 1035132, at *3 (S.D.N.Y. Sept. 7,

2001) ("If the class and the class opponent are involved in an ongoing business relationship,

communications from the class opponent to the class may be coercive." (quoting *Kleiner v. First*

*Nat'l Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985)) (internal brackets and quotation

marks omitted)).

The only cases brought to the Court's attention that analyze a similar situation interpret

the no-contact rule analogously.  In *Campbell*, the court (applying a parallel California rule)

granted the plaintiffs a protective order against similar communications in the context of a wage

and hour class action.  2012 WL 1355742, at *1.  That case involved a class of junior

accountants, some of whom were also members of a separate putative class action involving their

work in a more senior accountant position, which involved supervising the junior accountants.

The defendant wished to "interview these class members so that it c[ould] prepare its opposition

to the class certification motion" in the separate putative class action involving the senior

accountants.  *Id.*  The defendant contended that "only communications about class members'

*own* duties as junior accountants were covered by the ethical rule, and accordingly, that

"communications about . . . someone *else's* duties as [a junior accountant] are not covered by the

ban on communications."  *Id.* at *2.  The court concluded that the subject of the representation

"includes the work experiences of the class members [*i.e.*, the junior accountants] during the class period." *Id.*  It further determined that the now-senior accountants "cannot avoid talking about" junior accountants' work—either their own or that of others, and for this reason issued a protective order precluding further communications by the defendants with class members. *Id.* at *2-3.  Once the court in *Campbell* concluded that the requested contact would concern the subject of the representation, it did not even consider whether the defendant's rationale for the contact—seeking discovery from the class members—could constitute the type of need that would warrant a court-ordered exception to the no-contact rule.

The analysis in *Bower v. Bunker Hill Co.*, 689 F. Supp. 1032 (E.D. Wash. 1985), is in line with *Campbell*.  The *Bower* court, relying on a predecessor version of Rule 4.2, rejected the defendants' request to contact class members, where the defendants' "articulated reason" for the contact was "to obtain information to aid in the preparation of [their] own case." *Id.* at 1034. The court concluded that the need articulated by the defendants "is present in every case and can be readily filled by the use of the discovery process." *Id.*  It also noted that "the imbalance in knowledge and skill which exists between class members and defense counsel presents an extreme potential for prejudice to class members' rights." *Id.*

The exception to the no-contact rule for communications authorized by a court order cannot be extended here to encompass Bloomberg's request.  Consequently, if Bloomberg wishes to elicit information from class members, it must do so through depositions or other discovery.  *See* Simon, *supra*, at 1207 (suggesting that depositions constitute contact "authorized by law" under Rule 4.2); *see also Campbell*, 2012 WL 1355742, at *3 (asserting that "if [the defendant] wishes to get discovery [from] class members, it presumably can seek class counsel's consent, serve interrogatories, or depose them for as long as discovery is open"); *Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662, 666 (E.D. Pa. 2001) (noting, after denying defense

counsel the ability to informally interview certain putative members of a class action related to the case in issue, that the defendant remained "free to subpoena and depose these individuals to the extent permitted under the federal discovery rules").

**IV.     Conclusion**

For the foregoing reasons, it is hereby ordered that Plaintiffs' objections are SUSTAINED.  The order dated February 25, 2015, is overruled.

SO ORDERED.

Dated: April 22, 2015
       New York, New York

J. PAUL OETKEN
United States District Judge