# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAVEZ JACKSON, individually and on behalf of all others similarly situated,

    Plaintiffs,

vs.

BLOOMBERG L.P.,

    Defendant.

Civil Action No. 13-cv-02001(JPO)(GWG)

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between Shavez Jackson (the "Named Plaintiff") individually and on behalf of a class of individuals she represents (collectively referred to as the "Plaintiffs") and Bloomberg L.P. ("Bloomberg" or "Defendant"). The Plaintiffs and Bloomberg shall be collectively referred to as the "Parties."

### 1. RECITALS AND BACKGROUND

WHEREAS, a Class Action and Collective Action Complaint was filed in the above-captioned action (the "Litigation") on March 26, 2013, as amended on April 11, 2013 and November 19, 2013, in which claims were asserted against Bloomberg under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law ("NYLL") for the alleged failure to pay certain overtime amounts to the Named Plaintiff and all other "'Global Customer Support Representatives' working in New York" who allegedly are similarly situated;

WHEREAS, on March 19, 2014, the Court conditionally certified an FLSA collective action, certified a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, and appointed Getman & Sweeney, PLLC ("Class Counsel") as class counsel;

WHEREAS, the purpose of this Agreement is to settle fully and finally all wage and hour claims by Plaintiffs against Defendant to the extent described herein;

WHEREAS, Defendant denies all of the allegations made by Plaintiffs in the Litigation, and denies any and all liability and damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation;

WHEREAS, in or around June 2015, the Parties agreed to engage in settlement discussions in an effort to resolve the Litigation and agreed to pursue settlement of the Litigation through mediation;

WHEREAS, on July 15, 2015, the Parties engaged in an in-person mediation under the direction of a private mediator, the Honorable Diane M. Welsh (Ret.) of JAMS, and thereafter reached a settlement resulting in this Agreement;

WHEREAS, without admitting or conceding any liability or damages whatsoever and without admitting that wage and/or overtime amounts improperly were withheld from any employees, and to avoid the burden, expense, and uncertainty of continuing the Litigation, Bloomberg has agreed to settle the Litigation on the terms and conditions set forth in this Agreement;

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against Bloomberg in the Litigation, and the impact of this Agreement on Plaintiffs and putative members of the collective and class action, based upon its analysis and evaluation of a number of factors (including extensive documentation), and recognizing the risks of continued litigation, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable and that would not occur for several years, Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate, representing the litigation-risk adjusted fair settlement value of this case, and that this Agreement is in the best interest of the Plaintiffs and putative members of the Class;

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 2. DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**2.1 Affected Class Member.** "Affected Class Members" are Class Members (defined below) who do not timely and properly follow the procedure specified in the Class Notice approved by the Court to validly "opt out" of the Settlement and who do not cash a Settlement Check (defined below) within the Payout Period or Second Payout Period (defined below).

**2.2 Agreement.** "Agreement" means this Settlement Agreement and Release.

**2.3 Bloomberg's Counsel.** "Bloomberg's Counsel" shall mean Willkie Farr & Gallagher LLP.

**2.4 Class Counsel.** "Class Counsel" shall mean Getman & Sweeney, PLLC.

**2.5 Class Members.** "Class Members" shall be defined as all individuals who worked as a U.S.-based Global Customer Support ("GCUS") representative during the Class Period, including individuals who worked as a U.S.-based GCUS representative as a temporary worker through an employment agency during the Class Period, as reflected in Exhibit D; provided, however, that Non-Participating Class Members, as defined in Section 2.21, are not Class Members.

**2.6 Class Notice.** "Class Notice" means the Court-approved Class Notice of Proposed Settlement of Class Action and Collective Action Lawsuit, Preliminary Approval of Settlement and Hearing Date for Final Court Approval, attached hereto as Exhibit A.

**2.7 Class Period.** "Class Period" refers to the period from March 26, 2007 through March 31, 2014.

**2.8 Court.** "Court" shall mean the United States District Court for the Southern District of New York.

**2.9 Discovery Representatives.** "Discovery Representatives" shall refer to Berin Bezmen, Jason McCord, Sylvia Mrozewski, Kyle Tam, Neide Tembe, and Michelle Wells, collectively.

**2.10 DOL Payments.** "DOL Payments" means the gross payment of sums in connection with Bloomberg's agreement(s) with the U.S. Department of Labor ("DOL") regarding the GCUS representative position concerning the July 4, 2009 to April 28, 2013 timeframe. Bloomberg made one set of payments to certain Class Members on or about April 25, 2013 in the gross sum of $76,119.88 for the period July 4, 2009 to July 2, 2011 (the "First DOL Payment"). Bloomberg made a second set of payments to certain Class Members on or about November 8, 2013 in the gross sum of $161,393.36 for the July 3, 2011 to April 28, 2013 timeframe (the "Second DOL Payment"). The DOL Payments to Class Members for their time as GCUS representatives total $237,513.24.

**2.11 Errors and Omissions Fund.** The "Errors and Omissions Fund" is $50,000 that is reserved from the Net Settlement Amount (defined below) to cover any errors and omissions in the calculation and payout of the settlement fund. The Settlement Administrator will distribute the Errors and Omissions Funds upon the advice and consent of both parties. Any disputes between the parties may be resolved by the mediator, with costs to be shared equally by the parties.

**2.12 Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

**2.13 Final Approval.** "Final Approval" means that the Settlement has been finally approved by the Court and either (a) upon timely appeals, the United States Court of Appeals for the Second Circuit and/or the United States Supreme Court, has declined to consider, affirmed or otherwise approved the Court's Final Approval and the applicable date for seeking further appellate review has passed; or (b) the applicable date for seeking appellate review of the Court's Final Approval of the Settlement has passed without timely appeal or request for review having been made and cannot be extended.

**2.14 Final Approval Order**. "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving (a) the material terms and conditions of this Agreement, (b) distribution of the Settlement Checks and Service Awards, and (c) dismissal of the Litigation.

**2.15 FLSA Claims.** "FLSA Claims" shall refer to all wage and hour claims, including without limitation claims for unpaid overtime, arising under federal law.

**2.16 FLSA Opt-Ins.** "FLSA Opt-Ins" means the Named Plaintiff and twenty other individuals on whose behalf Class Counsel has filed a valid Notice of Consent to Sue in this Litigation, attached hereto as Exhibit C.

**2.17 GCUS Temps.** "GCUS Temps" means the 37 individuals denoted in Exhibit D who worked as GCUS representatives between March 26, 2007 and March 31, 2014 as temporary workers through an employment agency.

**2.18 Late Claimant.** "Late Claimant" means any Affected Class Member who requests to participate in the Settlement after the Payout Period has expired, but before any Residual Funds have been transmitted to the Cy Pres recipient, and who cashes a Settlement Check.

**2.19 Litigation.** "Litigation" means the above-captioned case.

**2.20 Net Settlement Amount**. "Net Settlement Amount" means the Settlement Amount to be paid by Bloomberg pursuant to this Agreement less: (1) Court-approved attorneys' fees and costs for Class Counsel; (2) any Court-approved Service Award to the Named Plaintiff and Discovery Representatives; and (3) any Errors and Omissions Fund amount approved by the Court.

**2.21 Non-Participating Class Member.** "Non-Participating Class Member" means the 17 Class Members on whose behalf Class Counsel has filed a Notice of Opt-Out from Participation in Action, and Class Members who follow the procedure specified in the Class Notice approved by the Court to validly "opt out" of the Settlement.

**2.22 Opt-out Period.** "Opt-out Period" will be from the date of the mailing of the Class Notice to the Class Members until sixty (60) days thereafter.

**2.23 Participating Class Member.** "Participating Class Member" means those Class Members who cash a Settlement Check within the Payout Period or Second Payout Period (defined below).

**2.24 Payout Period.** "Payout Period" shall be one hundred twenty (120) days from the date the Initial Settlement Checks (defined below) are first mailed by the Settlement Administrator.

**2.25 Plaintiff(s).** "Plaintiffs" are the Named Plaintiff, Affected Class Members, and Participating Class Members. "Plaintiff" is the Named Plaintiff.

**2.26 Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement, and directing the manner and timing of providing Class Notices to the Class Members.

**2.27 Qualified Fund.** "Qualified Fund" means the net funds available for distribution to Participating Class Members (net of service payments, attorneys' fees and costs, and the Errors and Omissions Funds).

**2.28 Qualified Settlement Fund.** "Qualified Settlement Fund" or "QSF" means the fund or account established by the Settlement Administrator (defined below), within the meaning of Treasury Regulations § 1.468B-1, et seq.

**2.29 Residual Fund.** The "Residual Fund" shall consist of any Settlement Check that remains uncashed within fifteen (15) days of the end of the Second Payout Period (defined below) and any funds from the Errors and Omissions Fund remaining within fifteen (15) days of the end of the Second Payout Period. Any amounts remaining in the Residual Fund after the expiration of the period during which Late Claimant Settlement Checks are payable will become part of a Cy Pres fund.

**2.30 Second Payout Period.** "Second Payout Period" shall be sixty (60) days from the date the Redistributed Settlement Checks (defined below) are first mailed by the Settlement Administrator.

**2.31 Service Award.** "Service Award" means a special payment made to the Named Plaintiff and/or Discovery Representatives as follows: to the Named Plaintiff to compensate her for initiating the Litigation, performing work in support of, or otherwise participating in, the Litigation, undertaking the risk of harm to her career and reputation, if any, and risk of liability for attorneys' fees and expenses in the event Plaintiffs were unsuccessful in the prosecution of the Litigation, and/or providing a general release to the Released Parties as described in Section 10 below; and to the Discovery Representatives for their work in providing ESI discovery and giving deposition testimony and other evidence to benefit the Class.

**2.32 Settlement.** "Settlement" means the disposition of the Litigation and all related claims effectuated by, and in accordance with the terms of, this Agreement.

**2.33 Settlement Administrator.** "Settlement Administrator" means the organization jointly retained by the Plaintiff responsible for the claims administration process as provided herein.

**2.34 Settlement Amount.** "Settlement Amount" means Three Million, Two Hundred Thousand Dollars and No Cents ($3,200,000.00), which is the gross amount to be paid by Bloomberg as provided by this Agreement (except for Bloomberg's share of payroll taxes). Under no circumstances shall Bloomberg be required to pay any amount greater than the Settlement Amount and its share of payroll taxes.

**2.35 Settlement Checks.** "Settlement Checks" shall mean (1) checks mailed out by the Settlement Administrator to pay the *pro rata* amount of Settlement Shares (as defined in Section 2.37) to the Net Settlement Amount ("Initial Settlement Checks"), along with any subsequent or replacement checks issued during the Payout Period; (2) checks mailed out by the Settlement Administrator to re-issue Settlement Checks that remained uncashed at the end of the Payout Period ("Redistributed Settlement Checks"); and (3) checks mailed out by the Settlement Administrator to distribute amounts from the Residual Fund to Late Claimants. Initial

Settlement Checks and any subsequent or replacement checks issued during the Payout Period shall remain payable until the close of the Payout Period.  Redistributed Settlement Checks shall remain payable until the close of the Second Payout Period.  Any subsequent or replacement checks issued during the Second Payout Period shall remain payable until the end of the Second Payout Period or for a period of fourteen (14) days, whichever is longer.  Settlement Checks issued to Late Claimants shall remain payable for a period of twenty-one (21) days from the date on which the check was mailed by the Settlement Administrator.

**2.36 Settlement Forms.**  "Settlement Forms" refers to the Class Notice (Exhibit A hereto) and any Change of Address form (Exhibit B hereto).

**2.37 Settlement Share**.  "Settlement Share" means each Class Member's share of the Settlement Amount as provided for in this Agreement.

**2.38 State Claims**.  "State Claims" shall refer to all wage-and-hour claims, including, without limitation, claims for unpaid overtime, arising under the laws of any state.

**2.39 Taxing Authority**.  "Taxing Authority" means the U.S. Internal Revenue Service or any other appropriate taxing authority.

3. **INITIAL PROCEDURAL ISSUES**

   **3.1 Binding Agreement.**  This Agreement is a binding agreement and contains all materially agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

   **3.2 Jurisdiction.**  The Litigation is brought and is before the Court under the FLSA and NYLL.  The Parties agree that the Court has jurisdiction over each and all of the claims in the Litigation.

   **3.3 Retainer and Responsibilities of the Settlement Administrator.**  Within ten (10) business days after the execution of this Agreement, Class Counsel shall retain a Settlement Administrator (upon approval by Defendant, approval not to be unreasonably withheld).  The Settlement Administrator shall be required to agree in writing to treat information it receives or generates as part of the claims administration process as confidential and to destroy or return all