**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

**SHAVEZ JACKSON, individually and on
behalf of others similarly situated,**

                              **Plaintiffs,**

-against-


**BLOOMBERG L.P.,**

                    **Defendant.**

**Case No. 13 CV 2001 (JPO)(GWG)**

**MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND APPROVAL OF CLASS COUNSEL'S FEES AND COSTS**

Respectfully submitted,

By:  */s/ Dan Getman*

Dan Getman
Getman & Sweeney PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370
Fax: (845) 255-8649
dgetman@getmanlaw.com


*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND........................................................... 1

    I.     The Court's Preliminary Approval Order, Notice and Claim Administration ............ 1

    II.    Results of Notice................................................................................................ 2

    III.   Contributions of Various Plaintiffs ................................................................... 3

SETTLEMENT TERMS ....................................................................................................... 5

ARGUMENT ........................................................................................................................ 5

    I.     Final Approval of the Settlement Agreement is Appropriate ................................... 5

    II.    The Settlement is Fair, Reasonable, and Adequate .......................................... 8

        A.  Litigation Through Trial Would be Complex, Costly, and Long ............................... 8

        B.  The Reaction of the Class Has Been Positive ............................................................. 10

        C.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the
            Case Responsibly ......................................................................................................... 10

        D.  Plaintiffs Would Face Real Risks if the Case Proceeded ......................................... 11

        E.  Maintaining a Class Through Trial Would Not Be Simple .................................... 12

        F.  Defendant's Ability to Withstand a Greater Judgment is Not at Issue..................... 12

        G.  The Settlement Fund is Substantial, Even in Light of the Best Possible
            Recovery and the Attendant Risks of Litigation........................................................ 13

    III.   Incentive Payments are Appropriate in this Case ..................................................... 15

    IV.   Class Counsel is Entitled to a Reasonable Fee of 29.5% of the Settlement
         Fund and Reimbursement of Reasonable Litigation Costs........................................ 18

        A.  The Terms in the Named Plaintiff's Retainer, the Opt-In Plaintiffs' Consent
            to Sue Forms, and the Settlement Agreement Entitle Class Counsel to Up to
            One-Third of the Settlement Fund ............................................................................. 19

        B.  The Percentage of the Fund Method of Awarding Attorneys' Fees Is
            Appropriate in Common Fund Cases ....................................................................... 20

        C.  An Award of 29.5% of the Settlement Fund as Attorneys' Fees is Reasonable ....... 22

           i.     Class Counsel has expended extensive time and labor on this case ............... 22

           ii.    The large and complex nature of this litigation warrant the award of the
                attorneys' fees being requested .......................................................................... 22

           iii.   Class Counsel took on a large amount of risk in prosecuting this case .......... 23

           iv.   Class Counsel's representation has been of the highest quality...................... 24

           v.    The requested fees are reasonable in relation to the settlement ..................... 25

           vi.   Public policy weighs in favor of awarding attorneys' fees ............................. 26

        D.  Class Counsel is Entitled to Reimbursement of Reasonable Litigation Costs .......... 27

i

E.   The Lodestar Cross Check Further Supports an Award to Class Counsel of
One-Third of the Settlement Fund. ......................................................................... 28

CONCLUSION ................................................................................................................................ 29

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Rose*, 03-7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003) ........................ 29

*Adeva v. Intertek USA Inc., et al.*, No. 09-CV-01096-SRC-MAS (D.N.J. Dec. 22, 2010) ............................................................................................................................ 26

*Beck v. Boeing Co.,* No. 00-CV-301P (W.D.Wa. Oct. 8, 2004) ................................... 17

*Beckman v. KeyBank, N.A.,* 293 F.R.D. 467 (S.D.N.Y. 2013) .......................... 10, 11, 12

*Beckman v. KeyBank, N.A.,* 85 Fed. R. Serv. 3d 593 (S.D.N.Y. 2013) ........................ 23

*Blum v. Stenson,* 465 U.S. 886 (1984) ....................................................................... 21

*Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980)........................................................ 21

*Bredbenner v. Liberty Travel, Inc.*, CIV.A. 09-905 MF, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) ..................................................................................................... 17

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).............................. 8, 15

*Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), 2010 WL 1948198 (S.D.N.Y. May 11, 2010)................................... 7, 26

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ............................................ 9

*Damassia v. Duane Reade, Inc.,* No. 04 Civ. 8819, No. 04 Civ. 2295, 2009 WL 5841128 (S.D.N.Y. July 27, 2009) ..................................................................... 17

*DeLeon v. Wells Fargo Bank, N.A.,* 1:12-CV-04494, 2015 WL 2255394 (S.D.N.Y. May 11, 2015 .................................................................................................. 26, 27

*deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440(DAB), 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010).................................................................................... 25

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980) .......................................... 26

*Dorn v. Eddington Sec., Inc.,* 08 CIV. 10271 LTS, 2011 WL 9380874 (S.D.N.Y. Sept. 21, 2011)..................................................................................................... 8

*Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337 (S.D.N.Y. 2012) .......... 23, 24

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ............................... 6, 13, 14, 15

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 09-CV-486 ETB, 2012 WL 5305694 (E.D.N.Y. Oct. 4, 2012).......................................................................... 28

*Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000)............................ 21, 22, 28, 29

*Guzman v. Joesons Auto Parts*, CV 11-4543 ETB, 2013 WL 2898154 (E.D.N.Y. June 13, 2013).................................................................................................... 24

*Hamadou v. Hess Corp.,* 12 CIV. 0250 JLC, 2015 WL 3824230 (S.D.N.Y. June 18, 2015)....................................................................................................... 4, 16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1988) ........................................ 6

*Hicks v. Stanley*, 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).............. 28

iii

*In re Am. Int'l Grp., Inc. Sec. Litig.*, 04 CIV. 8141 DAB, 2013 WL 1499412 (S.D.N.Y. Apr. 11, 2013) ................................................................................ 6

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................................................................ 9, 11, 13, 14

*In re Boesky Sec. Litig.*, 888 F. Supp. 551 (S.D.N.Y. 1995) ...................................... 28

*In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) ............................... 22

*In re EVCI Career Colls. Holding Corp. Sec. Litig.,* No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ............................................................. 7

*In re Lloyd's Am. Trust Fund Litig.*, 96 CIV.1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ........................................................................... 21, 28

*In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993) ............ 14

*In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465 (S.D.N.Y. 1998) ......... 29

*In re RJR Nabisco, Inc. Securities Litig.,* 818 (MBM), 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ......................................................................................... 29

*In re Top Tankers, Inc. Sec. Litig.*, 06 CIV. 13761 (CM), 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ................................................................................ 7

*In re Union Carbide Corp. Consumer Products Bus. Sec. Litig.*, 724 F. Supp. 160 (S.D.N.Y. 1989) ........................................................................................... 22

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ......................... 11

*Ingram v. Coca-Cola Co.,* 200 F.R.D. 685 (N.D.Ga.2001) ...................................... 17

*Jemine v. Dennis*, 901 F. Supp. 2d 365 (E.D.N.Y. 2012) ........................................ 23

*Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000) .................................................. 15

*Johnson v. Brennan,* 10 CIV. 4712 CM, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ......................................................................................................... 14

*Khait v. Whirlpool Corp.,* No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ......................................................................................................... 16

*Kidrick v. ABC Television Appliance Rental*, No. 97-69, 1999 WL 1027050 (N.D. W.Va. May 12, 1999) .................................................................................. 26

*Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149 (2d Cir.1998) ........................................ 21

*Kuzma v. Internal Revenue Service*, 821 F.2d 930 (2d Cir.1987) ............................. 27

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998) ................................... 27

*Lewis v. Alert Ambulette Serv. Corp.*, 11-CV-442, 2012 WL 170049 (E.D.N.Y. Jan. 19, 2012) ................................................................................................... 25

*Maley v. Del Glob. Techs. Corp.,* 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................... 29

*Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179 (D. Kan. 2002) .................. 6

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1998) ................. 6

iv

*Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 90 S. Ct. 616, 24 L.Ed.2d 593 (1970) ................ 21

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 06 CIV.4270 (PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ........................................................ 7

*Morangelli v. Chemed Corp.*, 275 F.R.D. 99 (E.D.N.Y. 2011) .................................................... 25

*Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611 (S.D.N.Y. 2012) ..................... 6, 12, 14

*Murillo v. Pacific Gas & Elec. Co.*, No. 2:08-1974 WBS GGH, 2010 WL 2889728 (E.D. Cal. July 21, 2010) ........................................................................ 17

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ........................................................ 6

*Rabin v. Concord Assets Group, Inc.,* 89 CIV. 6130 (LBS), 1991 WL 275757 (S.D.N.Y. Dec. 19, 1991 .................................................................. 29

*Raniere v. Citigroup Inc.*, 310 F.R.D. 211 (S.D.N.Y. 2015) ........................................... 18, 24, 27

*Reyes v. Buddha-Bar NYC*, 08 CIV. 02494(DF), 2009 WL 5841177 (S.D.N.Y. May 28, 2009) ................................................................ 17

*Roberts v. Texaco, Inc.,* 979 F. Supp. 185 (S.D.N.Y. 1997) .............................................. 16, 17

*Rotuna v. West Customer Management Group, LLC*, No. 4:09CV1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010) .............................................. 26

*Savoie v. Merchants Bank*, 166 F.3d 456 (2d Cir. 1999) .................................................. 21, 28

*Sewell v. Bovis Lend Lease, Inc.*, 09 CIV. 6548 RLE, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ............................................................ 16

*Taft v. Ackermans,* No. 02 Civ 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ................... 24

*Torres v. Gristede's Operating Corp.*, 04-CV-3316 PAC, 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ...................................................... 16

*Torres v. Gristede's Operating Corp.,* 04-CV-3316 PAC, 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) aff'd, 519 Fed. Appx. 1 (2d Cir. 2013) ......................... 7

*Toure v. Amerigroup Corp.,* No. 10 Civ 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) ................................................................ 16, 25

*Visa Check III*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003) ................................................................ 21

*Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96 (2d Cir. 2005) .................................. 6, 21

*Willix v. Healthfirst, Inc.,* No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ................................................................ 16, 24, 25

*Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669 (S.D. Iowa 2009) ................................. 17

*Wright v. Stern,* 553 F. Supp. 2d 337 (S.D.N.Y. 2008) ...................................................... 10, 16

**Other Authorities**
*Newberg on Class Actions*, §§ 11.22, *et seq.* (4th ed. 2002) ......................................... 5

Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237 (1985) ..................... 22

**Rules**

Fed. R. Civ. P. 23(e) ...................................................................................................................... 5

**PRELIMINARY STATEMENT**

Subject to final Court approval, the parties have settled Plaintiffs' and Class Members' claims against Defendant Bloomberg L.P., for $3,200,000.00.  The proposed settlement resolves all claims in this lawsuit under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law ("NYLL") alleging that Defendant failed to pay overtime to the Named Plaintiff and all other Global Customer Support (GCUS) Representatives working in New York. On April 5, 2016, the Court preliminarily approved the Parties' proposed settlement and authorized the issuance of Notice to Class Members. (*See* Doc. 113).

By this motion, Plaintiffs respectfully request that the Court: (i) grant final approval of the Settlement Agreement and Release ("Settlement Agreement") attached as Exhibit A to the Declaration of Dan Getman in Support of Plaintiffs' Motion for Final Approval of Class Settlement ("Getman Decl."); (ii) approve the service payments to various Plaintiffs as discussed in Argument Section III *infra*; (iii) approve an award of attorneys' fees in the amount of $944,000 (29.5% of the Settlement Fund), reimbursement of litigation expenses, including settlement administration costs, in the amount of $28, 501.88[1]; and (iv) enter judgment dismissing this action with prejudice in accordance with the Settlement Agreement.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.      The Court's Preliminary Approval Order, Notice and Claim Administration**

The procedural and factual history of this litigation up to the Court's Preliminary Approval Order is detailed in Plaintiffs' Memorandum in Support of Motion for Preliminary Approval of

---

[1] The costs sought are below actual current costs. Class Counsel's total costs to date are $29,156.60 ($15,617.60 in litigation costs and $13,539 in settlement administration costs).

Class Settlement, Approval of Plaintiffs' Proposed Notice of Settlement, and Other Relief (Doc. 285), and is not repeated here.

On April 5, 2016, the Court preliminarily approved the Parties' proposed settlement and authorized the issuance of Notice to Class Members. (See Doc. 113). The Court also approved the Notice of Class Action Settlement ("Notice") and authorized the mailing of the Notice to the Class Members. (*Id.*)

## II.        Results of Notice

On April 21, 2016, the Settlement Administrator, Simpluris, received the Court-approved Notice from Counsel. (Declaration of Christina Francisco ("Francisco Decl.") ¶ 5.) The Notice advised Class Members of their right to opt out of the Settlement, object to the Settlement, speak at the Final Fairness Hearing, or do nothing, and the implications of each such action. (*See* Doc. 110-1.) The Notice advised Class Members of applicable deadlines and other events, including the Final Fairness Hearing, and how Class Members could obtain additional information. (*Id.*)

On April 15, 2016 Defendant's counsel provided Simpluris with a mailing list ("Class List") containing the name, last known address, and pertinent employment information during the Class Period for the Class Members. (Francisco Decl. at ¶ 6.) The Class List contained data for 519 Class Members. (*Id.*) The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. (*Id.* at ¶ 7.) Then on May 5, 2016, after updating the mailing addresses through the NCOA, Notices were printed with the name and address of the Class Member and his or her estimated minimum payment, and were mailed via First Class Mail to 519 Class Members contained in the Class List. (*Id.* at ¶¶ 8, 11.)  On May 11, 2016, after determining that

estimated award amounts had inadvertently been excluded from the May 5 mailing, Simpluris mailed corrected notices to all 519 Class Members. (*Id.* at ¶ 11.)

If a Class Member's Notice was returned by the USPS as undeliverable, Simpluris performed an advanced address search on all of these addresses. (*Id.* at ¶ 10.) Simpluris attempted to find a forwarding address using Accurint, a reputable research tool owned by Lexis-Nexis. Simpluris used the Class Member's name and previous address to locate a current address. Altogether, Simpluris re-mailed 48 corrected Class Notices to either (a) a new forwarding address provided by the Post Office, (b) a newfound address using Accurint, or (c) a forwarding address provided by a Class Member. Ultimately, only five (5) Notice Packets of the corrected notice remains undeliverable because Simpluris was unable to find a deliverable address. (*Id.* at ¶ 11.)

The response to the notice has been overwhelmingly positive. No Class Members opted out of the settlement. (*Id.* at ¶ 13). Class Counsel received telephone calls from scores of Class Members and answered their questions about their claims and concerns. (Declaration of Dan Getman in Support of Plaintiffs' Motion for Final Approval of Class Settlement ("Getman Decl.") at ¶ 12.) Class Counsel were told by many of these Class Members that they were pleased with the settlement. (*Id.* at ¶ 13.) No class members have presented objections to the settlement. (Francisco Decl. at ¶ 14.)

## III.    Contributions of Various Plaintiffs

Various Plaintiffs were integral in this class action litigation and made significant contributions to the prosecution of the litigation, including the original Named Plaintiff Shavez Jackson and six Opt-In Plaintiffs who were deposed by Defendant (Discovery Representatives). (Getman Decl. at ¶ 14.) Named Plaintiff and Discovery Representatives have served the class by

providing detailed factual information regarding their job duties and hours worked, assisting with the preparation of the complaint, helping to prepare and execute declarations, sitting for depositions, producing documents in response to Defendants' discovery requests, and assuming the burden associated with assisting with litigation. (*Id.* at ¶ 14-25.) Although trial was unnecessary, the Named Plaintiff and Discovery Representatives were prepared to testify at trial. (*Id.* at ¶ 21.)   In addition, the Named Plaintiff and Discovery Representatives assumed other professional risks and burdens. Service Awards are commonly awarded in complex wage and hour litigation and are meant to compensate Named and participating Plaintiffs for the benefit they confer on the class, the time and effort they expend to see that the case proceeds successfully, the risks they bear by putting their names on publicly filed documents and by suing their former employer, and by becoming potentially liable for fees or costs if the litigation is unsuccessful. *Hamadou v. Hess Corp.,* 12 CIV. 0250 JLC, 2015 WL 3824230, at *4 (S.D.N.Y. June 18, 2015)("Such service awards are common in class action cases and are important to compensate plaintiffs such as those in this case for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by a plaintiff.")

The Named Plaintiff also assisted Class Counsel to prepare for the mediation that took place on July 15, 2015, and which culminated in this settlement. (*Id.* at ¶ 22.) She responded to fact-intensive questions regarding her job duties and hours worked and supplied Class Counsel with information to rebut Defendant's factual arguments. (*Id.* at ¶23.) She developed an in-depth understanding of the case and its risks so that she could provide Class Counsel with an informed Class Member's perspective throughout the negotiation process. (*Id.* at ¶ 24.) The Named Plaintiff was available by telephone throughout the mediation. (*Id.* at ¶ 22.) Without the efforts

of the Named Plaintiff and Discovery Representatives, this case on behalf of the Class would not have been brought, and this settlement would not have been achieved. (*Id.* at ¶ 25.)

## SETTLEMENT TERMS

The terms of the Settlement Agreement, which were preliminarily approved by the Court on April 5, 2016 (see Doc. 113), are summarized in Plaintiffs' Motion for Preliminary Approval of Class Settlement, Approval of Plaintiffs' Proposed Notice of Settlement, and Other Relief (Doc. No. 111), and are not repeated here.

## ARGUMENT

### I.   Final Approval of the Settlement Agreement is Appropriate

Because this is a class action, and because it involves FLSA claims, the Court must approve the settlement.  The procedure for approval includes three distinct steps:

1.   Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval, including preliminary approval of any agreed settlement classes;

2.   Dissemination of mailed and/or published notice of settlement to all affected class members; and

3.   A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002).  This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.  The Court has already preliminarily approved the proposed settlement (*see* Doc. 113) and notice of settlement has already been disseminated to all affected class members (*see* Factual and Procedural Background Section I *supra*).

The approval of a proposed class action settlement is a matter of discretion for the trial

court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998).   In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

Under Fed. R. Civ. P. 23(e), to grant final approval of a settlement, the Court must determine whether the Proposed Settlement is "fair, reasonable and adequate." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 04 CIV. 8141 DAB, 2013 WL 1499412 (S.D.N.Y. Apr. 11, 2013). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).  Courts examine procedural and substantive fairness in light of the strong judicial policy favoring settlements of class action suits. *Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal- Mart Stores*, 396 F.3d at 116 (internal quotations omitted); *Morris v. Affinity Health Plan, Inc.,* 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012) (same) (citations omitted); *see also, Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) ("When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable."); *also see, Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

If the settlement was achieved through experienced counsels' arm's-length negotiations,  "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec.*

*Litig.,* No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *In re Top Tankers, Inc. Sec. Litig.*, 06 CIV. 13761 (CM), 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008) (same). "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Clark v. Ecolab Inc .,* Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010). Ultimately, "[t]he Court gives weight to the parties' judgment that the settlement is fair and reasonable." *Torres v. Gristede's Operating Corp.,* 04-CV-3316 PAC, 2010 WL 5507892, at *3 (S.D.N.Y. Dec. 21, 2010) aff'd, 519 Fed. Appx. 1 (2d Cir. 2013); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 06 CIV.4270 (PAC), 2009 WL 5851465, at *4 (S.D.N.Y. Mar. 31, 2009) (same).

The procedural and factual history of this litigation up to the Court's Preliminary Approval Order is detailed in Plaintiffs' Memorandum in Support of Motion for Preliminary Approval of Class Settlement, Approval of Plaintiffs' Proposed Notice of Settlement, and Other Relief (Doc. 111). It is clear from the history of this case that the parties reached this settlement only after engaging in extensive and vigorous litigation, substantial discovery (*see* Getman Decl. at ¶ 45), which allowed each side to assess the potential risks of continued litigation, and robust settlement negotiations, including a full-day mediation session under the direction of experienced class action mediator and retired Magistrate Judge Diane M. Welsh. (*See* Doc. 111.) In preparing for settlement discussions, Class Counsel engaged in an exhaustive risk assessment to determine the fair settlement value of all claims.  (Getman Decl. at ¶ 43.) This assessment at all times guided Counsel's evaluation of offers and counter offers. (Getman Decl. at ¶ 44.) In other words,

the settlement was reached as a result of arm's-length negotiations between experienced, capable counsel after meaningful discovery.

## II.    The Settlement is Fair, Reasonable, and Adequate

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). *Massiah*, 2012 WL 5874655 at *2.    The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.   While "[t]he standard for approval of an FLSA settlement is lower than for a Rule 23 settlement", courts in the Second Circuit have found that the *Grinnell* factor analysis applies to settlement of the FLSA claims. *Dorn v. Eddington Sec., Inc.,* 08 CIV. 10271 LTS, 2011 WL 9380874, at *4 (S.D.N.Y. Sept. 21, 2011). Since this is both a class and collective action, the *Grinnell* factors must be reviewed. All of the *Grinnell* factors weigh in favor of granting final approval of the Settlement Agreement.

### A.  Litigation Through Trial Would be Complex, Costly, and Long
####    (*Grinnell* Factor 1)

By reaching a favorable settlement before trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y.

2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is no exception, with more than 500 Class Members. (Getman Decl. ¶ 10.) As part of the fair settlement value assessment, Counsel here also considered the time value of money – the financial benefit of having a liquidated sum at a date certain, rather than a chance of collection after trial, judgment, and appeals. (Getman Decl. ¶ 43.)

Although the parties have already undertaken considerable time and expense in litigating this matter (Getman Decl. ¶¶ 36-45), further litigation absent a settlement would necessarily result in additional expense and delay. Particularly, the parties would have to litigate the complex question of whether Plaintiffs' back wages should be paid at the regular time and one-half overtime rate, or using the fluctuating workweek method at a half-time rate pursuant to 29 C.F.R. § 778.114. This would likely require further motion practice. And since Plaintiffs claim that they worked off-the-clock, from home and remotely, and Defendant contends that not all time spent in the office was compensable, a complicated trial on damages, even on a representative basis, would also be necessary. There could be decertification for damages resulting in a complex damages phase resolution. And a class based damages trial would likely feature extensive testimony by Defendant, Plaintiffs, and numerous Class Members. Preparing and putting on evidence on the complex factual and legal issues at such a trial would consume tremendous amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the parties' disputes. If Defendant moved for decertification and the class was eventually decertified due to individualized questions of damages, it is possible that damages would have to be tried on an individual basis, necessitating potentially hundreds of hearings. Any judgment could foreseeably be appealed, thereby extending the duration of the litigation even further. This settlement, on the other hand, makes monetary relief available to all Class Members

in a prompt and efficient manger. Therefore, the first *Grinnell* factor weighs in favor of final approval.

### B.  The Reaction of the Class Has Been Positive
####      (*Grinnell* Factor 2)

As previously stated, the response to the notice has been overwhelmingly positive. No Class members opted out of the settlement. (Francisco Decl. at ¶ 13.) Class Counsel received telephone calls from numerous Class Members and answered their questions about their claims and concerns about retaliation. (Getman Decl. at ¶ 12.) Class Counsel were told by many of these Class Members that they were pleased with the settlement. (*Id.* at ¶ 13.) No Class Members have presented objections to the settlement.  (Francisco Decl. at ¶ 14.) "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern,* 553 F. Supp. 2d 337, 344–45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out). Thus, this factor weighs strongly in favor of final approval.

### C.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly
####      (*Grinnell* Factor 3)

Although preparing this case through trial would require thousands more hours of work for both sides, Class Counsel have completed more than enough discovery to unequivocally recommend settlement. "The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 475 (S.D.N.Y. 2013) (citation omitted); see also *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts

helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotations omitted).

The parties' discovery here meets this standard. Class Counsel interviewed current and former GCUS Reps to gather information relevant to the claims in the litigation; defended the depositions of the named plaintiff and six Opt-in Plaintiffs, took multiple depositions of Bloomberg employees; obtained, reviewed, and analyzed thousands of documents and electronically-stored data including, but not limited to, time and payroll records, human resources documents and employee personnel files; engaged in numerous discovery disputes which required court intervention; and responded to multiple discovery requests. (Getman Decl. ¶ 37). Counsel have reviewed every shred of wage data and every data point bearing on hours worked. Discovery here was an aggressive effort to litigate the case and counsel had an adequate appreciation of the merits of the case before negotiating the settlement. *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 475 (S.D.N.Y. 2013). No additional information was needed to adequately assess damages (should Plaintiffs prevail) or to adequately assess litigation risk on all claims and defenses. Therefore, this factor weighs strongly in favor of final approval.

### D.  Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

Although Plaintiffs believe their case is strong, it is subject to considerable risk as to the remaining questions on damages. In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotations omitted). A trial on the damages of the class would involve significant risks to Plaintiffs because of the fact-intensive nature of proving class-wide damages for unreported work under the New York Labor Law and the FLSA. Plaintiffs would also have to overcome Defendant's fluctuating workweek argument.

While Plaintiffs believe that they could ultimately establish damages on these claims to do so would require significant factual development at trial, as Bloomberg vigorously contests Plaintiffs' damages claims. While Plaintiffs believe that their claims are meritorious and class-wide damages provable, their counsel are experienced and realistic, and understand that the resolution of these issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. "Settlement eliminates the risk, expense, and delay inherent in the litigation process." *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 476 (S.D.N.Y. 2013). This factor weighs heavily in favor of final approval.

### E.  Maintaining a Class Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of maintaining the class status through trial is also present. While the Court has granted conditional certification of the FLSA claims and certified a Rule 23 class for parallel claims under the New York law, establishing damages at trial on a class-wide basis on such claims is a difficult endeavor that poses risks given the nature of the off the clock time worked, and payroll records which paid Plaintiffs on a salaried basis, along with the inherent difficulty of using representational testimony at trial. Defendant would likely move to decertify the class and there is a risk that the Court could decertify the class or effectively do so with respect to individualized damages calculations that Defendant alleges will be necessary at trial. *Morris v. Affinity Health Plan, Inc.,* 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012) (describing the risk of maintaining a class through trial). A contested class certification motion would likely require extensive discovery and briefing. "Settlement eliminates the risk, expense, and delay inherent in the litigation process." *Id.* The sixth *Grinnell* factor weighs in favor of final approval.

### F.  Defendant's Ability to Withstand a Greater Judgment is Not at Issue (*Grinnell* Factor 7)

Defendant's ability to withstand a greater judgment is not currently at issue. Even if the Defendant can withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). Counsel did not assess any litigation risk discount for inability to pay. Thus, Bloomberg's ability to pay more did not factor into the settlement terms. This factor does not hinder this Court from granting final approval.

### G. The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

Plaintiffs' counsel has determined that this case presents significant risks that militate toward substantial compromise on a number of key points (including the method by which back pay would be calculated - fluctuating work week or time and one-half – hours worked, amenability to class resolution, and the time value of money). Defendant has agreed to settle this case for a substantial amount, $3,200,000.00 for 519[2] Plaintiffs. (Getman Decl. at ¶10.) The settlement amount represents a good value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal. As described in the Getman Declaration, Getman & Sweeney engages in a rigorous and highly complex determination of the fair settlement value of all litigation prior to mediation.[3] Class counsel only will recommend a settlement as fair when we have engaged in this exhaustive

---

[2] 499 original Class Members, less 17 opt-outs, plus 37 temporary workers (see Motion for Preliminary Approval Doc No. 111).

[3] In simple terms, Fair Settlement Value is determined by measuring damages accurately and multiplying the chance of success by such damages, then factoring in the time value of money. Thus a settlement of a $10,000 claim with a 65% chance of success would have an FSV of $6,500 discounted by the difference in the expected period of payouts with a settlement versus trial and appeals.

analysis of each individual litigation risk and value for each claim and sub-part of each claim, determining thereby the fair settlement value for each Class Member.

For the court, "[t]he determination whether a settlement is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) *citing In re Austrian and German Bank Holocaust Litig.*, 80 F.Supp.2d at 178 and *In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993). "Instead, 'there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.' " *Morris v. Affinity Health Plan, Inc.,* 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (citing cases) "Moreover, when settlement assures immediate payment of substantial amounts to Class Members, even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road, settlement is reasonable under this factor." *Johnson v. Brennan,* 10 CIV. 4712 CM, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011) (internal citations omitted).

As Class Counsel, we do not believe we can ethically recommend a settlement as fair without engaging in such a mathematical calculation and we thus always do so. Here, each Class Member will receive payment based upon his or her relevant weeks of employment with Defendant. (Getman Decl. at ¶ 11.) As explained in detail in Plaintiffs' Motion for Preliminary Approval (Doc. No. 111), the actual amount that each Class Member will receive reflects a careful balancing of the strengths of their underlying claims and the risks that their claims would not ultimately prevail. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, Counsel consider the settlement amount is reasonable and is in the best interest of the class to accept.

14

Accordingly, all of the *Grinnell* factors weigh in favor of issuing final approval of the settlement. Further, the reaction of the Class has been positive and there have been no objections and no Class members have opted-out of the settlement. Because the settlement, on its face, is "fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant its final approval.

### III.     Incentive Payments are Appropriate in this Case

The Named Plaintiff and Opt-In Plaintiffs who served as Discovery Representatives, described in Factual and Procedural Background Section above, also seek incentive payments of $5,000 each for their work and willingness to represent the class. (Getman Dec. ¶¶ 14-35.) The awards are appropriate here because the Named Plaintiff and Discovery Representatives performed substantial services to, and bore substantial risks for, the class. Their services began with the original Named Plaintiff bringing the case filing the state and federal claims that were eventually resolved in the Settlement that allowed more than 500 current and former GCUS Reps to recover unpaid wages. (*Id.*) The Named Plaintiff and Discovery Representatives also assumed substantial professional risks and burdens in bringing the litigation. (*Id.*) Thus, a Service Award to the Named Plaintiff and Discovery Representatives is appropriate. (*Id.*)

In light of their efforts resulting in a substantial settlement on behalf of the settlement class, the Named Plaintiff and Discovery Representatives are entitled to a Service Award, to be distributed from the Settlement Fund. "Such service awards are common in class action cases and are important to compensate plaintiffs such as those in this case for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by a plaintiff." *Hamadou v. Hess Corp.,* 12 CIV. 0250 JLC, 2015 WL 3824230, at *4 (S.D.N.Y. June 18, 2015); *Toure v. Amerigroup*

*Corp.,* No. 10 Civ. 5391, 2012 WL 3240461, at * 5 (E.D.N.Y. Aug. 6, 2012) (approving service

awards of $10,000 and $5,000); *Sewell v. Bovis Lend Lease, Inc.*, 09 CIV. 6548 RLE, 2012 WL

1320124, at *14–15 (S.D.N.Y. Apr. 16, 2012) (finding reasonable and approving service awards

of $15,000 and $10,000 in wage and hour action); *Willix v. Healthfirst, Inc.,* No. 07 Civ. 1143,

2011 WL 754862, *7 (E.D.N.Y. Feb. 18, 2011) (approving service awards of $30,000, $15,000,

and $7,500); *Torres v. Gristede's Operating Corp.*, 04-CV-3316 PAC, 2010 WL 5507892, at *8

(S.D.N.Y. Dec. 21, 2010) *aff'd,* 519 F. App'x 1 (2d Cir. 2013) (finding reasonable service awards

of $15,000 to each of 15 named plaintiffs); *Khait v. Whirlpool Corp.,* No. 06 Civ. 6381, 2010

WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (approving service awards of $15,000 and $10,000,

respectively, in wage and hour class action); *see also, Roberts v. Texaco, Inc.,* 979 F. Supp. 185,

200–01 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly

stated as being the existence of special circumstances including the personal risk (if any)

incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort

expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear

added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending

himself or herself to the prosecution of the claims, and, of course, the ultimate recovery."); *also

see, Wright v. Stern,* 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) ($50,000 service award in

employment class action was reasonable) [citing: *Ingram v. Coca-Cola Co.,* 200 F.R.D. 685, 694

(N.D.Ga.2001)(approving service awards to two named plaintiffs of $300,000 each in two-year

lawsuit); *Beck v. Boeing Co.,* No. 00-CV-301P, at 4 (W.D.Wa. Oct. 8, 2004) (order approving

award of $100,000 each to twelve named plaintiffs in four-year lawsuit); *Roberts v. Texaco, Inc.,*

979 F.Supp. 185, 188-89 (S.D.N.Y.1997) (approving awards of $85,000 and $50,000 to named

plaintiffs in three-year lawsuit)]; *Damassia v. Duane Reade, Inc.,* No. 04 Civ. 8819, No. 04 Civ.

2295, 2009 WL 5841128, at *4 (S.D.N.Y. July 27, 2009) (approving service award of $55,000 to

11 named plaintiffs); *Reyes v. Buddha-Bar NYC*, 08 CIV. 02494(DF), 2009 WL 5841177, at *5

(S.D.N.Y. May 28, 2009) (approving service award of $7,500).

The service payments are also within the range granted in other wage-and-hour cases

throughout the country. *See*, e.g., *In re Janney Montgomery Scott LLC Financial Consultant

Litigation*, No. 06-3202, 2009 WL 2137224, *12 (E.D. Pa. July 16, 2009) ($20,000 service

payments in FLSA and Pennsylvania wage and hour case); *Murillo v. Pacific Gas & Elec. Co.*,

No. 2:08-1974 WBS GGH, 2010 WL 2889728, *12 (E.D. Cal. July 21, 2010) ($10,000

enhancement payment for class action under California law and the FLSA); *Wineland v. Casey's

Gen. Stores, Inc.*, 267 F.R.D. 669, 678 (S.D. Iowa 2009) ($10,000 service award to named

plaintiffs for class action under FLSA and various state wage and hour laws); *Bredbenner v.

Liberty Travel, Inc.*, CIV.A. 09-905 MF, 2011 WL 1344745, at *24 (D.N.J. Apr. 8, 2011)

($10,000 service payment to named plaintiffs for class action under FLSA and various state

wage and hour laws).

The Named Plaintiff also seeks an enhanced service award (with her general service

award for a total of $100,000) due to the special circumstances she has endured by pursuing this

litigation on behalf of the class. (Getman Dec. at ¶ 14-35.) There is no question that it takes

courage for an employee to challenge an employer's practices even when the employer is not a

powerful, global financial, data, software, and media company.

> It takes courage for any employee to challenge her employer's workplace practices, and
> this is particularly true when the employer is a powerful global financial institution. This
> recognition, combined with the effort put forth by the Named Plaintiffs during the
> litigation and the fact that the service awards are tailored to each Named Plaintiff's
> contribution to the case, lead to the conclusion that the service awards are allowable.

*Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015).

17

An internet-based legal news service reported on the class certification briefing, including the reference in Defendant's briefing to Named Plaintiff as a "disgruntled former employee." (Getman Dec. at ¶ 28.) Furthermore, Defendant identified Plaintiff in its class opposition filing as someone who was fired due to "poor performance". (Getman Dec. ¶ 29.) This information is accessible on the first page of a simple Google search of the Named Plaintiff's first and last name – something future prospective employers can be expected to do as a matter of routine. (Getman Dec. at ¶ 30.) By pursuing this litigation against such a prominent global company the Named Plaintiff risked harm to her reputation.  Because by agreeing to settle this case on behalf of the class, the Named Plaintiff entered into a broader release than other Class Members, the additional sum requested fairly compensates the Named Plaintiff for her broader release. (*Id.* at ¶¶ 34-35.) While the Named Plaintiff has forever released all claims against Bloomberg, she bore the risks of being the sole Named Plaintiff against a prominent and globally recognized company. For these reasons, Plaintiffs seek a total service award for Ms. Jackson in an enhanced amount of $100,000. (Getman Dec. at ¶¶ 14-35.)

No Class Member has objected to the Service Awards including the extra sum proposed for the Named Plaintiff. (Francisco Decl. at ¶ 14.) The Service Awards are consistent with the payments made to named plaintiffs and discovery representatives in this Circuit, other jurisdictions, and in other wage-and-hour cases. They are intended to compensate these Plaintiffs for their willingness to serve the Class, the services they rendered, and the risks they bore to ensure a favorable class settlement. Thus, the Court should find that the Service Awards are reasonable.

**IV.   Class Counsel is Entitled to a Reasonable Fee of 29.5% of the Settlement Fund and Reimbursement of Reasonable Litigation Costs**

Class Counsel respectfully moves the Court for an award of attorneys' fees in the amount of 29.5% of the Settlement Fund, or $944,000, reimbursement of litigation expenses, including settlement administration costs, in the amount of $28, 501.88[4]. A summary of Class Counsel's fees are attached as Exhibit B to the Getman Declaration. During the past 39 months of litigating this class and collective action, Class Counsel's efforts have been without compensation (*id.* at ¶ 67), and their entitlement to be paid has been wholly contingent upon achieving a good result.

**A.   The Terms in the Named Plaintiff's Retainer, the Opt-In Plaintiffs' Consent to Sue Forms, and the Settlement Agreement Entitle Class Counsel to Up to One-Third of the Settlement Fund**

The Named Plaintiffs and opt-in Plaintiffs agreed to Class Counsel's fee of up to one-third of the common fund and reimbursement for costs, including costs of settlement administration. (*Id.* at ¶ 68.) The Named Plaintiff specifically agreed in the individually negotiated retainer, that Class Counsel would recover up to one-third of the gross settlement, or counsel's hourly rate, whichever was greater, plus litigation and settlement administration costs. (*Id.* at ¶ 69) Similarly, the Consent to Sue forms that each of the opt-in Plaintiffs signed and submitted to the Court state "I understand that the fees retained by the attorneys will be either the amount received from the defendant or 1/3 of my gross settlement or judgment amount, whichever is greater." (*Id.* at ¶ 70.) The opt-ins also agreed in their Consent to Sue to reimburse Class Counsel for costs. (*Id.* at ¶ 71.) Moreover, the Court preliminarily approved the Settlement Agreement in this case that was agreed to by the Named Plaintiffs on behalf of the class and the Defendants. (*See* Doc. 113.) The Agreement provides that "Class Counsel will petition the Court for an award of attorneys' fees and will seek reimbursement of their actual litigation costs and

---

[4] The costs sought are below actual current costs. Class Counsel's total costs to date are $29,156.60 ($15,617.60 in litigation costs and $13,539 in settlement administration costs).

19

expenses to be paid from the Settlement Amount...  Bloomberg will not oppose an application by Class Counsel for fees and costs up to 1/3 of the Settlement Amount..." (*See* Doc. 112-2 at ¶ 5.2).[5]  Finally, the Court-approved Notice that was mailed to all Class Members stated the following:

> 13. How will the lawyers be paid?

> Named Plaintiff has entered into a retainer agreement with Class Counsel. Under the agreement, Class Counsel has the right to ask the Court to approve up to one-third (33.33%) of the settlement amount as their attorneys' fees. The fees will compensate Class Counsel for their time investigating the facts, litigating the case, and negotiating the settlement, along with bearing the risk that the case might never succeed and they would be paid nothing, and for conferring a benefit upon all Class Members. Class Counsel will also ask the Court to approve the reimbursement of their out-of-pocket costs. You may ask for a copy of the retainer agreement by calling or writing Class Counsel at the telephone number or address below.

(Doc. 110-1.) In accordance with the numerous agreed upon provisions an award of $944,000  in attorneys' fees, which is 29.5% of the Settlement Fund, reimbursement of litigation expenses, including settlement administration costs, in the amount of $28, 501.88 is appropriate.

### B.  The Percentage of the Fund Method of Awarding Attorneys' Fees Is Appropriate in Common Fund Cases

In common fund situations, the attorneys whose efforts created the fund are entitled to a reasonable fee—set by the court—to be taken from the fund. *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 47 (2d Cir. 2000); *citing Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) (citing cases). The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost. *Id. citing Boeing*, 444 U.S. at 478; *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 392, 90 S. Ct. 616, 24 L.Ed.2d 593 (1970)).

---

[5] The total fees and costs requested are $972,501.88, or about 30.4% of the settlement, are below the 1/3 authorized by the agreement.

What constitutes a reasonable fee is properly committed to the sound discretion of the district court, *see Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 172 (2d Cir.1998), and will not be overturned absent an abuse of discretion, such as a mistake of law or a clearly erroneous factual finding. *Goldberger*, 209 F.3d at 47.

In 1984, in *Blum v. Stenson,* the Supreme Court observed that "under the 'common fund doctrine,' ... a reasonable fee is based on a percentage of the fund bestowed on the class." 465 U.S. 886, 900 n. 16 (1984). The Second Circuit has accordingly recognized that *Blum* indicates that the percentage-of-the-fund method is a viable method for awarding reasonable attorneys' fees. *Goldberger*, 209 F.3d at 49 *citing Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999). Moreover, the trend in this Circuit is toward the percentage method, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005), *citing Visa Check III*, 297 F. Supp. 2d 503, 520 (E.D.N.Y. 2003), which "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation," *Id.*, *citing In re Lloyd's Am. Trust Fund Litig.*, 96 CIV.1262 RWS, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002).

The percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases. *Savoie*, 166 F.3d at 460-61, *citing* Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237, 254–59 (1985). It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method. *Id.* at 461. For the same reason, the percentage-of-the-fund method also removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet. *Id.* Finally, the lodestar method is time-

consuming and burdensome on the courts. *See In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993).

### C.  An Award of 29.5% of the Settlement Fund as Attorneys' Fees is Reasonable

District Courts should be guided by the so-called "*Goldberger* factors" in determining a reasonable common fund fee, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50, *citing In re Union Carbide Corp. Consumer Products Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989). Here, all of the Goldberger factors weigh in favor of awarding Class Counsel their requested fees.

### i.  Class Counsel has expended extensive time and labor on this case

The procedural and factual history of this litigation up to the Court's Preliminary Approval Order is detailed in Plaintiffs' Memorandum in Support of Motion for Preliminary Approval of Class Settlement, Approval of Plaintiffs' Proposed Notice of Settlement, and Other Relief (Doc. 111). It is clear from the history of this case that Plaintiffs' counsel expended substantial time and labor on this case over the past almost four years, including researching the factual and legal basis for the claims, filing the complaint, filing and opposing several motions, engaging in significant discovery, and negotiating the settlement. Accordingly, this factor weighs in favor of awarding Class Counsel's requested fees.

### ii.  The large and complex nature of this litigation warrant the award of the attorneys' fees being requested

Hybrid FLSA and state wage-and-hour law cases are often large and complex, *see Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) (courts have recognized that FLSA cases are complex and that "[a]mong FLSA cases, the most complex type

is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to [Rule] 23 in the same action as the FLSA 'opt in' collective action…"). This litigation involved the FLSA and state wage and hour claims of more than 500 class members which includes claims of "unrecorded" work performed off-the-clock, from home and remotely. As Bloomberg is a highly technical data driven company, the litigation has required learning how Bloomberg tracks tasks performed by GCUS Representatives, what time stamps exist, and all the different elements of tasks performed by Plaintiffs outside the office, Bloomberg's policies and practices, and where evidence might reside to prove the claims and damages.

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *Beckman v. KeyBank, N.A.*, 85 Fed. R. Serv. 3d 593 (S.D.N.Y. 2013); *see also Jemine v. Dennis*, 901 F. Supp. 2d 365, 392 (E.D.N.Y. 2012) ("in a class action suit, as here, the large number of plaintiffs increase the complexity of the litigation").Thus, this factor favors awarding Class Counsel the requested fees.

### iii.   Class Counsel took on a large amount of risk in prosecuting this case

Class Counsel took on substantial risk in prosecuting this case. As was discussed in Section II.D. *supra*, this case involves complex issues of both liability and damages. Plaintiffs were far from guaranteed to prevail on all of these issues. Further, as Plaintiffs' counsel prosecuted this case on a contingency basis, advancing both fees and costs, counsel took on the risk that they would not ultimately recover anything for their time and effort. This is a significant risk in every case we take. Cases can be lost or rendered minimal, plaintiffs can be lost or withdraw, data may not exist to prove claims, and defendants fight these cases hard every step of the way. "Uncertainty that an ultimate recovery will be obtained is highly relevant in

23

determining the reasonableness of an award." *Febus*, LLC, 870 F. Supp. 2d at 340. Accordingly, the award of fees is appropriate in a case like this one where Class Counsel's fee entitlement is entirely contingent upon success. *See, DeLeon v. Wells Fargo Bank, N.A.*, 1:12-CV-04494, 2015 WL 2255394, at *6 (S.D.N.Y. May 11, 2015)*; see also, Willix*, 2011 WL 754862, at *7.

### iv.  Class Counsel's representation has been of the highest quality

"To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Raniere v. Citigroup Inc.,* 310 F.R.D. 211, 221 (S.D.N.Y. 2015) (citing: *Taft v. Ackermans,* No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007)); *see also, Guzman v. Joesons Auto Parts*, CV 11-4543 ETB, 2013 WL 2898154, at *3 (E.D.N.Y. June 13, 2013). A court may take into consideration the quality of counsel's submissions to and work before the court, counsel's past experience litigating other, similar cases, and whether counsel "achieved a reasonable recovery" for plaintiff. *Id.* (citations omitted).

As discussed in Section II, Class Counsel has achieved a fair, reasonable, and adequate recovery for Plaintiffs. Further, Class Counsel's submissions to this Court have been of the highest quality, achieving a collective action class and Rule 23 class. Class Counsel has demonstrated their knowledge of the factual and legal issues in this case. Finally, Class Counsel's vast experience successfully litigating similar cases has been recognized by numerous courts, including the Southern District of New York. *See, e.g.*, *Murphy, et al, v. Northern Dutchess Paramedics,* 7:11-cv-05661-LMS (SDNY, Doc. 101, 8/15/14) (M.J. Smith) ("Class Counsel has extensive experience in litigating wage and hour collective and class actions. Numerous courts have recognized Class Counsel's extensive experience in successfully litigating wage and hour cases." Doc. 101, ¶15); *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 119

24

(E.D.N.Y. 2011) (finding Getman & Sweeney to have "stellar" qualifications as class counsel in wage-and-hour class litigation); *Lewis v. Alert Ambulette Serv. Corp.*, 11-CV-442, 2012 WL 170049, *15 (E.D.N.Y. Jan. 19, 2012) ("[Getman & Sweeney] has brought to bear its considerable experience in handling class actions, and other complex litigation, particularly claims of the type asserted in the present action"); *Brumley v. Camin Cargo Control, Inc.*, CIV.A. 08-1798 JLL, 2012 WL 1019337 (D.N.J. Mar. 26, 2012) ("Both this Court and other district courts around the country have recognized Plaintiffs' counsel's experience and skill in prosecuting wage-and-hour class litigation."); *Bredbenner v. Liberty Travel, Inc.*, Civil Action Nos. 09–905 (MF), 09–1248(MF), 09–4587(MF), 2011 WL 1344745, at *7 and *20 (D.N.J. April 8, 2011) (finding Getman & Sweeney highly experienced and competent in wage-and-hour litigation.) Consequently, Class Counsel should be awarded the requested fees.

### v.  The requested fees are reasonable in relation to the settlement

Class Counsel's attorneys' fees request of 29.5% is consistent with Courts in this Circuit that have awarded one-third or more of the settlement fund as attorneys' fees in wage-and-hour cases. *See, e.g., Toure v. Amerigroup Corp.*, 10 CIV. 5391 RLM, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) (33%); *Willix,* 2011 WL 754862, at *6 (33%); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440(DAB), 2010 WL 3322580, *8 (S.D. N.Y. Aug. 23, 2010) (awarding class counsel one-third of settlement fund); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), 2010 WL 1948198, *8 (S.D. N.Y. May 11, 2010) (one-third).

Similarly, Class Counsel's attorneys' fees request is also consistent with decisions from across the country that have awarded one-third or more in wage-and-hour settlements. *See*, *e.g., Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc.*, No. 11 Civ. 592–wmc, 2013 WL 5745102, *1 (W.D. Wis. Oct. 23, 2013) (awarding class counsel 1/3 of the settlement fund for

Hybrid FLSA and Rule 23 Class Action wage and hour case); *Adeva v. Intertek USA Inc.*, *et al.*, No. 09 Civ. 01096-SRC-MAS, Dkt. 228, pp. 1, 7 (D. N.J. Dec. 22, 2010) (awarding class 34% of the class settlement fund in a wage-and-hour case); *Rotuna v. West Customer Mgmt. Group, LLC*, 4:09 Civ. 1608, 2010 WL 2490989, *7-8 (N.D. Ohio June 15, 2010) (one-third); *Kidrick v. ABC Television Appliance Rental*, No. 97-69, 1999 WL 1027050, *4 (N.D. W.Va. May 12, 1999) (one-third). Accordingly, this factor weighs in favor of approval of the requested fees.

### vi.  Public policy weighs in favor of awarding attorneys' fees

In wage-and-hour class action lawsuits, public policy favors a common fund attorneys' fee award. *DeLeon v. Wells Fargo Bank, N.A.,* 1:12-CV-04494, 2015 WL 2255394, at *6 (S.D.N.Y. May 11, 2015). Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role. *Id (citing Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338–39 (1980)). Attorneys who fill the private attorney general role must be adequately compensated for their efforts. *DeLeon v. Wells Fargo Bank, N.A.,* 1:12-CV-04494, 2015 WL 2255394, at *6 (S.D.N.Y. May 11, 2015)*. To do so means encouraging a pool of competent lawyers to take such cases, and ensuring that an adequate return on highly successful outcomes covers those cases where any firm can expect to lose or receive little compensation for years of work.  Plaintiff 's firms float cases like this through overhead and staffing labor for years at a time, all with uncertain chance of recovery. If not fully compensated for their work on a global basis, attorneys would not be able to afford this work and wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Id., citing Goldberger* 209 F.3d at 51 (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest"). "Adequate compensation for attorneys who protect wage and hour rights furthers the remedial

purposes of the FLSA and the NYLL." *DeLeon v. Wells Fargo Bank, N.A.,* 1:12-CV-04494, 2015 WL 2255394, at *6 (S.D.N.Y. May 11, 2015).

Based upon the negotiated fee agreement in this case, the typical percentage of compensation in similar cases in this Circuit and nationwide, and the *Goldberger* factors, Class Counsel is entitled to a reasonable attorneys' fees award of 29.5% of the Settlement Fund.

### D.  Class Counsel is Entitled to Reimbursement of Reasonable Litigation Costs

It is well-settled in this Circuit that "attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). *See also Kuzma v. Internal Revenue Service*, 821 F.2d 930, 933-34 (2d Cir.1987) ("Identifiable out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable...and are often distinguished from nonrecoverable routine office overhead, which must be absorbed within the attorney's hourly rate."). Thus, courts typically allow counsel to recover their out-of-pocket expenses including filing fees, process service fees, court reporter fees, mediation fees, translator fees, videographer fees, postage and photocopies, that are reasonable and were incidental and necessary to the representation of the Class. *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 222 (S.D.N.Y. 2015); *see also, Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 09-CV-486 ETB, 2012 WL 5305694 (E.D.N.Y. Oct. 4, 2012).

The full set of invoices and documentation for various costs is set forth in Exhibit C to the Getman Declaration.  Plaintiffs' counsel expended $15,617.60 in litigation costs, and $13,539 in settlement administration costs to bring the case to conclusion. However, Class Counsel only seeks reimbursement of litigation expenses, including settlement administration costs, in the amount of $28, 501.88 –the estimated costs at the time class allocations were

calculated. All costs expended are recoverable under the FLSA. The costs are summarized in Exhibit D to the Getman Declaration.

###     E.   The Lodestar Cross Check Further Supports an Award to Class Counsel of One-Third of the Settlement Fund.

Following *Goldberger*, courts usually apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check." *Goldberger*, 209 F.3d at 50.  The Second Circuit "encourages the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage."  *Id.*   As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate.  *See, Hicks v. Stanley*, 01 CIV. 10071 (RJH), 2005 WL 2757792, at *8 (S.D.N.Y. Oct. 24, 2005). Courts then consider whether a multiplier is warranted based on factors such as (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved.  *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995); *see also Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460.

Courts regularly award lodestar multipliers from 2 to 6 times lodestar.  *See, e.g.,  In re Lloyd's Am. Trust Fund Litig.,* 96 CIV.1262 RWS, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002), aff'd sub nom. *Adams v. Rose*, 03-7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003) ("Here, the resulting multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit."); *Maley v. Del Glob. Techs. Corp.,* 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (the "modest multiplier of 4.65 is fair and reasonable");  *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding multiplier of 3.97 times the lodestar); *Rabin v. Concord Assets Group, Inc.,* 89 CIV. 6130 (LBS), 1991 WL 275757, at *1 (S.D.N.Y. Dec. 19, 1991) (awarding multiplier of 4.4);  *In re RJR Nabisco, Inc.*

*Securities Litig.,* 818 (MBM), 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6).  Here, Class Counsel seeks a modest lodestar multiplier of 1.93 − which is near the bottom of the range regularly awarded by courts in this Circuit.

In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50.  Rather, the "reasonableness of the claimed lodestar can be tested by the court's familiarity with the case[.]" *Id.*  Class Counsel spent more than 1,600 hours over the course of over 3 years to litigate and settle this matter.  (Getman Decl. ¶ 67.)  The time spent by Class Counsel is described in the accompanying Declaration of Dan Getman and Class Counsel's contemporaneous time records attached thereto.  (Getman Decl. ¶¶ 5-6 & Exs. B, C)  The hours worked by Class Counsel result in a lodestar of $ 487,649.00.  (Getman Decl. ¶ 61.) This includes $472,074.00 in billings to date and an additional $15,575.00 to cover anticipated final approval and settlement administration billings.  (*Id*.) If the Court grants this motion, Class Counsel will recover approximately 1.93 times their lodestar fees.  (*Id*.)


## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Final Approval of Class Settlement and enter the Proposed Order.

Dated:  July 6, 2016

Respectfully submitted,


By:      */s/Dan Getman*

      Dan Getman
      Getman & Sweeney PLLC
      9 Paradies Lane
      New Paltz, NY 12561
      Telephone: (845) 255-9370
      dgetman@getmansweeney.com


      *Attorneys for Plaintiffs*